Robert E. MONTGOMERY and Lenora
H. Montgomery, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. IP 92–407–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 6, 1993.

Thomas J. O'Rourke, Virginia H. Johnson, Shaw Bransford & O'Rourke, Washington, DC, for plaintiffs.

Michael W. David, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Jeffrey L. Hunter, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on cross motions for summary judgment. The parties have filed their briefs and the matter is now ready to be resolved. For the reasons discussed below, this Court GRANTS the plaintiffs' motion for summary judgment and DENIES the defendants' motion for summary judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

The parties do not dispute the facts in this case. Plaintiff Robert E. Montgomery ("Robert") is a retired federal employee who participated in the Civil Service Retirement System ("CSRS"). He is married to plaintiff Lenora H. Montgomery ("Lenora"). The Montgomerys reside in Sheridan, Indiana. During the course of Robert's employment with the United States government, he contributed an aggregate of $27,417.00 in after tax money to the CSRS fund (the "Fund"). Robert retired in 1986. At that time, he was given a choice of retirement annuity plans, as required by 5 U.S.C. § 8343a(b). His

choices were a regular annuity which paid $1,321.00 per month, or an "alternative form of annuity" (the "alternative annuity"), which would provide a lump-sum payment equal to the amount that Robert contributed to the Fund and a reduced annuity which paid $1,183.00 per month. He opted for the alternative annuity.

In 1987, Robert received $41,625.15 pursuant to the alternative annuity. $27,428.49 of this amount was the lump-sum payment equal to the amount that Robert contributed to the Fund over the years plus interest of $11.49. The remaining $14,196.66 was the total amount of monthly annuity payments he received that year. The Montgomerys filed their 1987 federal income tax return and reported the payments they received from the alternative annuity.

In February 1990, the Montgomerys filed a claim for refund with the Internal Revenue Service Center in Memphis, Tennessee, for the 1987 tax year. They claimed that the entire lump-sum payment of $27,428.49 constituted a nontaxable return on capital. As a result, the Montgomerys believed they were entitled to a tax refund of $7,265 plus interest. On May 24, 1990, the Internal Revenue Service disallowed the Montgomerys' claim.

On April 7, 1992, the Montgomerys brought this action pursuant to 28 U.S.C. § 1346(a)(1), which provides this Court with concurrent jurisdiction of a "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." On July 1, 1992, the defendant United States of America filed its answer, in which it admitted all allegations in the plaintiffs' complaint except the claim that federal income tax was erroneously or illegally assessed and collected.

The Montgomerys and the United States filed motions for summary judgment on January 29, 1993, and February 1, 1993, respectively. Because the parties agree that there are no genuine issues of material fact in this case, there is one issue to be resolved from a summary judgment standpoint: which party is entitled to judgment as a matter of law? The Montgomerys argue that pursuant to provisions in the United States Code the full

amount of their lump-sum payment may be treated as a nontaxable recovery of basis. The United States argues, pursuant to those same provisions, that the Montgomerys must recover Robert's basis in aliquot portions over many years, rather than all at once, so that the Montgomerys are not entitled to any refund.

## II. DISCUSSION

■ 26 U.S.C. § 72 provides the rules for determining the tax treatment of amounts received under an annuity. The rules apply to CSRS payments. *See Shimota v. United States,* 21 Cl.Ct. 510, 521 (1990), *aff'd,* 943 F.2d 1312 (Fed.Cir.1991) (adopting Claims Court's opinion), *cert. denied,* — U.S. —, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). In general, any amount received as an annuity is included in gross income. 26 U.S.C. § 72(a). However, "that part of any amount received as an annuity ... which bears the same ratio to such amount as the investment in the contract ... bears to the expected return under the contract" is excluded from gross income. *Id.* § 72(b). This exclusion ratio allows the tax payer to recover his or her basis in the investment over the term of the annuity contract.

In addition, amounts that are received under an annuity contract which are not received as an annuity, and which are received on or after the annuity starting date, are included in gross income unless some statutory provision creates an exception. 26 U.S.C. § 72(e)(1)–(2). One such statutory exception is found at 26 U.S.C. § 72(e)(5)(E), which exempts from gross income:

(i) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract, and

(ii) any amount received under a contract on its complete surrender, redemption or maturity.

The Montgomerys argue that this exception applies to Robert's lump-sum payment, and in support they rely on 26 U.S.C. §§ 72(d) and 414(i)–(k). Section 72(d) pro-

vides: "For purposes of this section, employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract." Section 414(i) provides:

the term "defined contribution plan" means a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

Section 414(j) provides that "the term 'defined benefit plan' means any plan which is not a defined contribution plan." Section 414(k) provides:

A defined benefit plan which provides a benefit derived from employer contributions which is based partially on the balance of the separate account of the participant shall ... for purposes of section[ ] 72(d) ... be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of the participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan....

The gist of the Montgomerys' argument is that although CSRS is a "defined benefit plan," the alternative annuity that Robert elected to receive provides a benefit that is derived from employer contributions which is based partially on the balance of a separate participant's account, so that § 414(k) applies. Accordingly, the lump-sum payment—which the Montgomerys argue is a benefit based on Robert's separate account—is for purposes of § 72(d) considered a "defined contribution plan." If the lump-sum benefit is treated as a "defined contribution plan" for purposes of § 72(d), it may be treated as a separate contract. Thus, the lump sum payment falls within the exception created by § 72(e)(5)(E). It constitutes an amount received under a contract in full discharge of the obligation under the contract, which is in the nature of a refund of the consideration paid for the contract.

The United States argues that the Montgomerys' position is without merit because the separate contract rule of § 72(d) is inapplicable. According to the United States, CSRS is a "defined benefit plan" and not a "defined contribution plan" as required by § 72(d), and cannot be considered partially a defined contribution plan pursuant to § 414(k) because the CSRS alternative annuity cannot meet the requirements of § 414(k). Specifically, the United States argues that under CSRS there is neither any "separate account of a participant" nor any benefit provided by the alternative annuity that is derived from employer contributions and based partly on the balance of the separate account of a participant. According to the United States, the lump-sum payment, even if based on a separate account of a participant, is not derived from any employer contributions.

The Montgomerys respond by arguing that because CSRS provides for a separate record of each participant's contributions, CSRS provides a "separate account of a participant." They also argue that the Fund is comprised of, among other things, government—i.e. employer—contributions, that the reduced annuity payments come from the Fund, and that the lump-sum payment is based on the balance of the participant's separate account. Accordingly, they argue that CSRS does provide benefits "derived from employer contributions" and benefits "based partly on the balance of the separate account of a participant."

The meaning and application of § 414(k), which the parties' dispute requires this Court to interpret and apply, is an issue of first impression in the Seventh Circuit. In fact, this Court has found only one other case which addresses the meaning of § 414(k). In *Guilzon v. Commissioner of Internal Revenue*, 985 F.2d 819 (5th Cir.1993), the court addressed the meaning of "a separate account of a participant" and "a benefit derived from employer contributions which is based partly on the balance of a separate account of a participant," and considered whether the alternative annuity provided by CSRS met these requirements and thus qualified for partial treatment as a defined contribution

plan for purposes of § 72(d).[1]

## A. THE FIFTH CIRCUIT'S INTERPRE-TATION & APPLICATION OF § 414(k)

### 1. THE "SEPARATE ACCOUNT" REQUIREMENT

In *Guilzon*, the court held that CSRS provided a separate account for each participant. 985 F.2d at 821–23. The court read § 414(k)'s reference to a "separate account of a participant" as being the same as § 414(i)'s reference to "an individual account for each participant." *Id.* at 821–22. The court noted that CSRS provides for separate records of each employee's contributions, but not for separation of contributed funds. As in this case, the government argued that a requirement for a "separate account" is allocation of actual earnings or losses, and because individual participant accounts under CSRS gained no interest and suffered no losses, there were no "separate accounts." The court found that § 414(i) unambiguously "states that a separate account consists of the employee's contributions and '*any* income, expenses, gains and losses, and *any* forfeitures ... which *may* be allocated to such participant's account,'" and rejected the government's argument. *Id.* at 822–23 (quoting § 414(i)) (emphasis added by court of appeals). The court reasoned that use of the permissive term "may" and the term "any," which indicates an option rather than a requirement, indicates that "an account can qualify for a separate account without having earnings and losses allocated to it." *Id.* at 823. As a result, the court held that CSRS met § 414(k)'s requirement that there be a separate account of a participant.

### 2. THE REQUIREMENT THAT THERE BE "A BENEFIT DERIVED FROM EMPLOYER CONTRIBUTIONS WHICH IS BASED PARTLY ON THE BALANCE OF THE SEPARATE AC-COUNT OF A PARTICIPANT"

The court then held that the requirements of § 414(k) were not met by the CSRS alternative annuity because:

Section 414(k) expressly requires that the "defined benefit plan ... provide a *benefit derived from employer contributions.*" 26 U.S.C. § 414(k) (emphasis added). Mr. Guilzon's retirement benefits were in no way based on employer contributions. The CSRS does not provide for employer contributions. CSRS benefits are based upon the employee's contributions, average salary, and years of employment. 5 U.S.C. § 8339. Indeed, the very statute which specifically governs the type of annuity chosen by Mr. Guilzon explicitly states that "an employee or Member may at the time of retiring ... elect annuity benefits under this section ... *based on the service of the employee or Member.*" 5 U.S.C. § 8343a(a) (emphasis added). Reading the CSRS statutes—5 U.S.C. §§ 8339, 8343a—consistently with the applicable Tax Code statutes—26 U.S.C. §§ 72(d), 414(k)—leaves no other conclusion but that Mr. Guilzon's retirement plan did not provide a benefit derived from employer contributions as required by section 414(k). With that conclusion, the Guilzons' house of cards falls.

985 F.2d at 823. The court explained that the taxpayers' argument concerning the meaning of § 414(k), which was based on legislative history, was neither relevant because the language of § 414(k) is unambiguous, nor persuasive.

There are three keys to this portion of the Fifth Circuit's interpretation and application of § 414(k). First, the court read the phrase "derived from employer contributions" as being synonymous with "based upon employer contributions." *See Guilzon*, 985 F.2d at 823. The second key is the meaning the court assigned to the phrase "based on." According to the court in *Guilzon*, a benefit is "based on" employer contributions if it is the product of a formula which in some way uses the amount of employer contributions as a factor to determine the amount that a participant receives. Third, the court held

---

1. The plaintiff in *Guilzon* was represented by the same counsel that represent the Montgomerys in this case. It appears that in both *Guilzon* and this case the plaintiffs have relied on the same legal arguments. After briefing concluded in this case, the court of appeals' announced its decision in *Guilzon*.

that there are no employer contributions pursuant to CSRS. Not surprisingly, this led the court to conclude that there could be no benefit based on an employer contribution.

## B. THIS COURT'S INTERPRETATION & APPLICATION OF § 414(k)

■ The United States in this case has not offered any argument in support of its position with regard to the "separate account" requirement that was not addressed by the Fifth Circuit in *Guilzon.* Because it agrees with *Guilzon* 's interpretation of the separate account requirement, and with its application to CSRS's provision of separate records for each participant, the Court finds, for the same reasons discussed in *Guilzon,* 985 F.2d at 821–22, that the separate account requirement is met in this case.

■ However, this Court must respectively disagree with the *Guilzon* court's view on the meaning of § 414(k)'s requirement that there be "a benefit derived from employee contributions which is based partly on the balance of the separate account." Initially, this Court differs with the court in *Guilzon* with respect to the meaning and application of the phrase "a benefit derived from employer contributions." As discussed above, the court in *Guilzon* read the phrase "derived from employer contributions," which is not defined in the tax code, to be synonymous with the phrase "based upon employer contributions"—i.e., the product of a formula which in some way uses the amount of employer contributions as a factor to determine the amount of a benefit that a participant receives. When a word is not defined by statute it should be construed in accord with its ordinary or natural meaning. *Smith v. United States,* — U.S. ——, ——, 113 S.Ct. 2050, 2051–53, 124 L.Ed.2d 138 (1993). This reading, however, is contrary to the phrase's natural and ordinary meaning. The key word in the phrase is "derived," the natural or ordinary meaning of which is "receive[d] or obtain[ed] from a source or origin," *Random House Webster's College Dictionary* (1991), or "take[n] or receive[d] especially

from a source." *Webster's Third New International Dictionary* (1981). Accordingly, this Court finds that a benefit is "derived from employer contributions" if the benefit received or obtained financial support from employer contributions.

The Court also differs with the *Guilzon* court's conclusion that there are no employer contributions under CSRS because such a conclusion is in direct contradiction to 5 U.S.C. § 8334(a), which provides:

> (1) The employing agency shall deduct and withhold 7 percent of the basic pay of an employee.... *An equal amount shall be contributed from the appropriation or fund used to pay the employee....*

> (2) The amounts so deducted and withheld, *together with the amounts so contributed,* shall be deposited in the Treasury of the United States to the credit of the Fund under such procedures as the Comptroller General of the United States may so prescribe.

(emphasis added). The Fund is comprised, in part, of employer contributions,[2] and the alternative annuity provides annuity payments from the Fund. Thus, the alternative annuity clearly provides "a benefit derived from employer contributions."

This leads us to the last critical question: does the alternative annuity provide a benefit "based in part on the balance of the separate account of a participant"? This Court believes that it does. As a result of Robert opting for the alternative annuity, Robert's monthly annuity payment is decreased. The method for computing the decreased payment is set out at 5 C.F.R. § 2205(a):

> To compute the beginning rate of annuity payable to a retiree who elects an alternative form of annuity, OPM will first compute the monthly rate of annuity otherwise payable.... That monthly rate is then reduced *by an amount equal to the retiree's lump-sum credit divided by the present value factor for the retiree's attained age (in full years) at the time of retirement.* The reduced monthly rate is then

---

**2.** The United States acknowledges that CSRS provides for government—i.e., employer—contributions. *See* Memorandum of Law in Support of

the United States' Cross–Motion for Summary Judgment at 7.

**1066**

rounded to the next lowest dollar and becomes the rate of annuity payable.

(emphasis added). By regulation the amount by which Robert's monthly payment under the alternative annuity is decreased is based on the amount of his lump-sum payment, which is equal to the balance of his separate account—i.e., they are reduced by amounts which have a present value equal to the lump-sum payment. Thus, the amount of the alternative annuity payment is "based in part on the balance of the separate account of [the] participant." [3]

Because the alternative annuity provides "a benefit derived from employer contributions which is based in part on the balance of the separate account of a participant," benefits provided under the alternative annuity, to the extent they are "based upon the separate account of a participant," are to "be treated as constituting a defined contribution plan" under § 72(d). The lump-sum payment is a benefit based upon the separate account of a participant, and the amount of the lump-sum payment is equal to the amount of the employee's contributions—i.e., the balance of the participant's separate account.[4] In addition, because the lump-sum payment benefit is to be treated as if it is a "defined contribution plan" to the extent it is comprised of employee contributions, it may be treated as a separate contract under § 72(d). Further, because the lump-sum payment is equal to the amount of Robert's employee contributions and income allocable thereto, it is an "amount received … in full discharge of the obligation of the contract which is in the nature of a refund of the consideration paid for the contract" for purposes of § 72(e)(5)(E). The lump-sum payment therefore falls within the exception created by § 72(e)(5)(E) and is not included in gross income. As a result, the Montgomerys

are entitled to a refund of $7,265 from their 1987 taxes.

### III. SUMMARY & CONCLUSION

The parties agree that there are no material facts in dispute and that their only dispute is over interpretation and application of law. Therefore, the sole question with respect to the parties' cross-motions for summary judgment is which party is entitled to judgment as a matter of law. Because the law is with the plaintiffs, their motion for summary judgment is GRANTED. Because the law is against the defendant, its motion for summary judgment is DENIED.

IT IS SO ORDERED.

**3.** The Court rejects the Montgomerys' argument that the alternative annuity under CSRS meets the requirement of § 414(k) that there be "a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant" because there are benefits derived from the employer contributions and other benefits which are based on the balance of the separate account of a participant. The language of § 414(k) clearly requires that there be at least one benefit which is *both* de-

rived from employer contributions and based partly on the balance of the separate account of a participant. The Montgomerys' argument does not acknowledge this requirement.

**4.** Because it does not impact the outcome in this case, this Court does not address whether the decreased annuity payments are also a benefit based on the separate account.