**Dale F. GEORGE and Marlene George, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 108–89T, 378–89T and 90–285T.**

United States Court of Federal Claims.

Feb. 1, 1994.

**372**

Thomas J. O'Rourke, Washington, DC, for plaintiffs.

W.C. Rapp, Washington, DC, with whom was Acting Asst. Atty. Gen. Michael L. Paup, for defendant.

## *OPINION*

ROBINSON, Judge.

This matter is before the court on the parties' cross-motions for summary judgment. Upon joint motions of the parties, the three cases contained herein were consolidated by Orders of the court dated October 15, 1992[1] and March 22, 1993.[2] Oral argument was held on September 28, 1993.

Plaintiffs, in all three cases, seek a tax refund based on their claim that their respective lump-sum credit distributions received pursuant to 5 U.S.C. § 8343a should be treated as tax-free returns of capital. The issue presented is whether the "alternative form of annuity," provided for under 5 U.S.C. § 8343a, is properly classed as a separate contract under 26 U.S.C. § 72(d) of the Internal Revenue Code (I.R.C.) of 1986, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, 102 Stat. 3342 (TAMRA), pursuant to 26 U.S.C. § 72(e)(5)(E)(i).

Plaintiff Betty Pietsch[3] raises the separate issue of whether her "deemed" redeposit remains a tax-free return of capital, or is taxable under 26 U.S.C. § 72(e)(2)(A) because it must be mixed with other contributions and, therefore, reclassified as "an amount received under an annuity contract" and "not received as an annuity."

---

**1.** Consolidating *Johns v. United States,* Cl.Ct. No. 90–285T with this case.

**2.** Consolidating *Pietsch v. United States,* Cl.Ct. No. 378–89T with this case.

**3.** Plaintiff's husband, Vincent Pietsch Jr., is a party to this action because he filed a joint return with his wife for the tax year in question.

Plaintiff William S. Johns [4] raises the question of whether his "deemed" deposit is taxable in the year of retirement or taxable pro rata over the life of the annuity. For the following reasons, the court holds:

1. That the "alternative form of annuity" does not qualify as a separate contract under 26 U.S.C. §§ 72(d) and 72(e)(5)(E)(i);

2. That Mrs. Pietsch's "deemed" redeposit was mixed with other contributions and is taxable under § 72(e)(2)(A); and

3. That Mr. Johns "deemed" deposit should be taxed initially, i.e., when deemed to have been received, and not over the life of his annuity.

Therefore, the court will deny plaintiffs' November 20, 1992 motion for summary judgment and September 23, 1992 cross-motion for summary judgment and grant defendant's July 28, 1992 motion for summary judgment and January 4, 1993 cross-motion for summary judgment.

*Factual Background*

Federal employees hired prior to January 1, 1984, were eligible to participate in the Civil Service Retirement System (CSRS), by contributing part of their salary to the Civil Service Retirement and Disability Fund (Fund). 5 U.S.C. § 8334. Employing agencies are required to deduct a specified amount from each participating employee's salary and to contribute an equal amount from the funds available to the employing agency to pay salaries. 5 U.S.C. § 8334(a)(1); 5 C.F.R. § 831.111. The amount withheld from the employee's salary is taxable in the year in which the deduction was made. *Hogan v. United States,* 513 F.2d 170, 175 (6th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 55 (1975). The amount contributed by the employing agency and any interest earned on the employee's investment are not taxed to the employee until distribution. 26 U.S.C. §§ 72, 402(a).

Employees who leave federal service prior to becoming eligible for retirement are entitled to receive a "lump-sum credit" pursuant to 5 U.S.C. § 8342.[5] In that case, the lump-sum credit is not classed as gross income, but instead as a non-taxable return of capital. Rev.Rul. 70–150, 1970–1 C.B. 106. The election to receive a lump-sum credit voids all annuity rights. 5 U.S.C. § 8342; *Yarbrough v. OPM,* 770 F.2d 1056 (Fed.Cir.1985). Employees who meet the eligibility requirements for retirement set forth in 5 U.S.C. § 8336 are entitled to retire from federal employment and receive either a CSRS annuity under 5 U.S.C. §§ 8336 and 8339 or a lump-sum credit under 5 U.S.C. § 8342. As stated above, an election to receive a lump-sum credit voids an employee's right to an annuity.

The CSRS was amended in 1986 by the passage of the Federal Employees Retirement System Act of 1986, Pub.L. No. 99–335, 100 Stat. 514 (FERS Act). Under that Act, which is still in effect, an employee who retires after 1986 has the right to choose among three forms of annuities. 5 U.S.C. § 8343a. A retiree may elect the basic annuity under 5 U.S.C. § 8339, the basic annuity and a survivor annuity under 5 U.S.C. § 8341(b)(1), or the "alternative form of annuity" under 5 U.S.C. § 8343a(b).

The "alternative form of annuity" has two components. First, the retiree receives a lump-sum credit. Under this option, the

---

4. Lela H. Johns, the wife of the plaintiff, is a party to this action because she filed a joint tax return with plaintiff for the year in question.

5. 5 U.S.C. § 8331(8) defines the "lump-sum credit" as follows:

(8) "lump-sum credit" means the unrefunded amount consisting of—
  (A) retirement deductions made from the basic pay of an employee or Member;
  (B) amounts deposited by an employee or Member covering earlier service, including any amounts deposited under section 8344(j) of this title; and

(C) interest on the deductions and deposits at 4 percent a year to December 31, 1947, and 3 percent a year thereafter compounded annually to December 31, 1956, or, in the case of an employee or Member separated or transferred to a position in which he does not continue subject to this subchapter before he has completed 5 years of civilian service, to the date of separation or transfer;
but does not include interest—
  (i) if the service covered thereby aggregates 1 year or less; or
  (ii) for the fractional part of the month in the total service.

lump-sum credit has been defined by this court to be "an accelerated distribution of annuity payments that would otherwise be paid to the retiree over the expected duration of the CSRS annuity." *Shimota v. United States,* 21 Cl.Ct. 510, 522 (1990), *aff'd,* 943 F.2d 1312 (Fed.Cir.1991), *cert. denied,* ―― U.S. ――, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). The retiree also receives a monthly rate of annuity equal to the rate of annuity under the basic annuity, reduced "by an amount equal to the retiree's lump-sum credit divided by the present value factor for the retiree's attained age (in full years) at the time of retirement." 5 C.F.R. § 831.2205(a).[6]

Plaintiff Betty Pietsch (Mrs. Pietsch) was employed by the U.S. Department of the Navy for more than 29 years until she voluntarily left federal service on June 11, 1982. During her employment, Mrs. Pietsch made mandatory contributions to the CSRS totalling $32,231.15. When Mrs. Pietsch left federal service in 1982, she elected to receive a lump-sum credit of her previously taxed CSRS contributions in the amount of $32,-231.15 plus $38.85 in interest.[7] Mrs. Pietsch returned to federal employment on March 31, 1986, and remained employed until August 1, 1987. During this period, she made additional mandatory contributions to the fund totalling $409.36. When Mrs. Pietsch retired, she was over 55 years of age and would have qualified for an immediate annuity had she not already accepted a lump-sum credit in 1982, which forfeited her right to receive an annuity. The Office of Personnel Management (OPM) allowed Mrs. Pietsch to redeposit her lump-sum credit of $32,270 with CSRS in order to qualify for the "alternative form of annuity" embodied in 5 U.S.C. § 8343a.

The handling of the retirees' elections of the "alternative form of annuity" when the

retiree has already received a lump-sum credit of previously contributed funds is addressed in 5 C.F.R. § 831.2206. In that event, retiring employees may redeposit the amount of lump-sum credit in order to increase their annuity. Retirees who elect the "alternative form of annuity" may redeposit a previously received lump-sum credit and then receive a lump-sum credit equal to their entire contributions to the Fund. *Id.* However, no money actually changes hands. Instead, redeposits are "deemed" to have been made for the purpose of computing the "alternative form of annuity". *Id.* This procedure "eliminate[s] the administrative burden [upon the Government] of first receiving deposit[ed] or redeposit[ed] payments from the retiree and then merely returning them to the retiree in the payment of the lump-sum credit." 51 Fed.Reg. 42987, 42989 (Nov. 28, 1986).

Following these guidelines, Mrs. Pietsch was "deemed" to have redeposited $32,270 and then "deemed" to have received an amount equal to the redeposit. OPM also "deemed" that Mrs. Pietsch deposited interest on the redeposit in the amount of $5,612 as required by 5 U.S.C. § 8334.

Mrs. Pietsch was advised by OPM that her lump-sum credit for federal tax purposes would be $38,291.36. The lump-sum credit consisted of her post-March, 1986 contributions to the Fund in the amount of $409.36 and a "deemed" redeposit of $37,882. The "deemed" redeposit consisted of the $32,270 that was refunded to Mrs. Pietsch in 1982, plus interest on this refund in the amount of $5,612. After applying the exclusion ratio in accordance with IRS guidelines,[8] Mr. and Mrs. Pietsch reported $35,156 of income on their 1987 federal income tax return attributable to Mrs. Pietsch's lump-sum credit.

---

**6.** The option to elect the "alternative form of annuity" was suspended for most federal employees who retired, or will retire after December 1, 1990 and before October 1, 1995. 5 U.S.C. § 8343a(e).

**7.** Mrs. Pietsch was not required to report the lump-sum credit as income on her 1982 federal income tax return because it was a non-taxable return of previously taxed contributions to the CSRS. Rev.Rul. 70–150, 1970–1 C.B. 106.

**8.** 26 U.S.C. § 72 allows for the tax-free return of capital as part of annuity payments.

Gross income does not include that part of any amount received as an annuity under an annuity, endowment, or life insurance contract which bears the same ratio to such amount as the investment in the contract (as of the annuity starting date) bears to the expected return under the contract (as of such date).

26 U.S.C. § 72(b)(1).

Mr. and Mrs. Pietsch filed a claim for refund with the Internal Revenue Service (IRS) in November, 1988, claiming the lump-sum credit was a tax-free return of capital. Alternatively, the Pietsches claimed that the amount of the "deemed" redeposit was neither actually nor constructively received in 1987 and was not taxable. As a third alternative, the Pietsches claimed that even if the lump-sum credit were taxable, the amount of the "deemed" interest payment of $5,612 was a deductible interest expense. The Commissioner of Revenue issued a Notice of Disallowance on August 16, 1990, in which he ruled that the Pietsches could not exclude the entire lump-sum credit, and that the Pietsch's tax liability for 1987 was properly determined.

William S. Johns (Mr. Johns) was also a federal employee and a participant in the CSRS. Mr. Johns was employed by the federal government from August, 1957, until his retirement on January 3, 1987. From 1957 until 1963, Mr. Johns was not covered by the CSRS. In 1963, Mr. Johns became a participant in the CSRS, and OPM credited $3,665 to his retirement account, reflecting the amount that he would have paid into the Fund had he been a CSRS participant from 1957 to 1963. This amount is referred to by the OPM as a "deemed deposit." After 1963, and until his retirement in 1987, Mr. Johns made mandatory contributions to the Fund in the amount of $35,233.53. These contributions were withheld from his salary and were fully included in his taxable income for each of the years in which they were made. *See Hogan v. United States,* 513 F.2d 170, 175 (6th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 55 (1975).

At the time of his retirement, Mr. Johns was over 55 years of age and qualified for an annuity under 5 U.S.C. § 8336(c). For the purpose of computing Mr. Johns' annuity under the provisions of the CSRS, his total contributions to the Fund were considered to be $38,898.53. This amount included his actual contributions as well as the "deemed" deposit. Mr. Johns elected the "alternative form of annuity" provided for under 5 U.S.C. § 8343a. He received a lump-sum credit in the amount of $35,233.53, less withheld income taxes, in 1987, plus a reduced monthly annuity payment of $1,881.

Mr. and Mrs. Johns were advised by OPM that their lump-sum credit for income tax purposes was $38,898.53. The Johnses reported for 1987 federal income tax purposes that Mr. Johns had received a $38,898.53 lump-sum credit of which $36,254 was taxable pursuant to the exclusion ratio in 26 U.S.C. § 72(b). The Johnses filed a claim for refund with the IRS in April, 1988, asserting that the lump-sum credit was a tax-free return of capital. The IRS disallowed this claim on June 21, 1988. The Johnses filed a second claim for refund with the IRS on October 22, 1990, alleging that the "deemed" deposit should be taxed on a prorated basis, because the Johnses are cash-basis taxpayers who neither actually nor constructively received the amount of the "deemed" deposit in 1987.

### Contentions of the Parties

Plaintiffs insist that despite this court's prior decision in *Shimota v. United States,* 21 Cl.Ct. 510 (1990), *aff'd,* 943 F.2d 1312 (Fed.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992), their lump-sum credits should be treated as returns of capital pursuant to 26 U.S.C. § 72(e)(5)(E)(i)[9] and, thus, excluded from their gross incomes pursuant to 26 U.S.C. § 72(e)(5)(A).[10] Plaintiffs each maintain that their respective lump-sum credits are a refund of their contributions in return for a full

---

**9.** IRC § 72(e)(5)(E)(i) provides:

This paragraph shall apply to—
  (i) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract.
In the case of any amount to which the proceeding sentence applies, the rule of paragraph (2)(A) shall not apply.

**10.** IRC § 72(e)(5)(A) provides:

In any case to which this paragraph applies—
  (i) paragraphs (2)(B) and (4)(A) shall not apply, and
  (ii) if paragraph (2)(A) does not apply,
the amount shall be included in gross income, but only to the extent it exceeds the investment in the contract.

surrender of all rights under the separate contract consisting of their contributions. In order for this argument to prevail, plaintiffs must show that § 72(d) permits them to treat their contributions as a separate contract.[11] Plaintiffs observe that although § 72(d) only states that it applies to defined contribution plans, § 414(k)(2) allows a defined benefit plan to be treated as a defined contribution plan for purposes of § 72(d) if specific criteria are satisfied.[12]

Defendant contends that plaintiffs are attempting to re-litigate precisely the same issues raised in *Shimota*. This court, in *Shimota*, held that a lump-sum under the "alternative form of annuity" is an amount received under an annuity contract, and not received as an annuity and, therefore, the distribution was subject to income taxation and not a tax-free return of capital. *Shimota*, 21 Cl.Ct. at 518.[13] The court specifically noted that the lump-sum distribution received under 5 U.S.C. § 8343a is taxable pursuant to 26 U.S.C. §§ 72(e)(2) and 402. *Id.*

Defendant claims that the argument relied upon by plaintiffs, that the lump-sum credits are not taxable under 26 U.S.C. § 72(d), was rejected by this court and the United States Court of Appeals for the Federal Circuit in *Shimota*. Alternatively, defendant asserts that the lump-sum credit is not a separate contract because it cannot be separated from the annuity payments received by plaintiffs. Finally, defendant contends that plaintiffs constructively received the "deemed" deposit or "deemed" redeposit in 1987 when OPM used these deposits to increase plaintiffs' retirement annuities. Because plaintiffs Pietsch and Johns received an economic ben-

efit in 1987, defendant claims that Mr. Johns's "deemed" deposit and Mrs. Pietsch's "deemed" redeposit should be taxed in 1987.

Plaintiffs respond that consideration of their case is not barred by *Shimota*. Plaintiffs contend that defendant's reliance on the doctrine of *stare decisis* is misplaced. Plaintiffs maintain that *Shimota* decided only three issues:

1. That the CSRS is a qualified plan;
2. That distributions are taxed under I.R.C. § 72; and
3. That the lump-sum credit received with the reduced annuity is taxed under I.R.C. § 72(e).

Plaintiffs assert that this court in *Shimota* did not consider the applicability of the separate contracts doctrine of 26 U.S.C. §§ 72(d) and 414(k) to the lump-sum distribution. Under the separate contracts theory, the lump-sum credit would be a tax-free return of capital. Alternatively, plaintiffs claim that the "deemed" deposit and "deemed" redeposit should not be included in their taxable incomes. Plaintiffs contend that they neither actually nor constructively received these amounts in 1987. Plaintiffs also contend that the economic benefits doctrine does not apply to qualified employees trust, because these trusts are governed by specific tax code provisions and should not be interpreted according to general principles of tax law such as the economic benefits doctrine.

### DISCUSSION

■ This case is before the court on the parties' cross-motions for summary judgment. Summary judgment is appropriate if there are no genuine issues of material facts in dispute and the movant is entitled to judg-

---

**11.** 26 U.S.C. § 72(d) provides:
For purposes of this section, employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract.

**12.** 26 U.S.C. § 414(k)(2) provides in part that:
A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall—
    . . . .
    (2) for purposes of section[ ] 72(d) (relating to treatment of employee contributions as separate contract), . . . be treated as consisting of a

defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan.

**13.** Under this position, the employee's return of capital is tax-free; however, the return of capital is spread over the life of the annuity. Thus, each payment, including the lump-sum payment, is treated as both the receipt of income and the return of "an aliquot portion" of the premium paid for it. *See Shimota*, 21 Cl.Ct. at 516 n. 12.

ment as a matter of law. RCFC 56. Judgment is entered on cross-motions for summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the court agrees with the parties that there are no genuine issues of material fact in dispute, and that this case is appropriate for resolution by summary judgment.

## A. *Separate Contracts Doctrine.*

■ Plaintiffs claim that the decision in *Shimota* is not determinative of the present action. They contend that the court did not address the separate contracts doctrine [14] and its impact on Treas.Reg. § 1.72–2(a)(3)(i) (1991). In *Shimota,* however, the plaintiffs did argue that Mr. Shimota's annuity and lump-sum credit were from separate programs or contracts. The Shimotas claimed that the lump-sum credit was a distribution from a separate contract which consisted solely of a refund of previously taxed funds and, thus, was not taxable. *Shimota,* 21 Cl.Ct. at 522. This court rejected their argument and concluded that the lump-sum credit and the monthly annuity authorized by 5 U.S.C. § 8343a were part of a single program or contract by virtue of Treas.Reg. § 1.72–2(a)(3)(i), and, thus, was taxable under 26 U.S.C. § 72(e)(2).[15] *Id.* at 522–23.

On appeal to the United States Court of Appeals for the Federal Circuit, the Shimotas advanced the separate contracts argument in their reply brief, as well as at oral argument. While the Federal Circuit did not specifically address these arguments in its summary affirmance of the Claims Court decision, it did state, "The arguments presented by Shimota in this appeal were fully considered and the issues correctly decided in [the Claims Court's] thorough and well-reasoned opinion." *Shimota v. United States,*

943 F.2d 1312 (Fed.Cir.1991). Finally, the separate contracts issue was raised by appellants in *Shimota* in their petition for writ of certiorari to the United States Supreme Court. The Supreme Court denied certiorari in *Shimota v. United States,* — U.S. —, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992).

In light of these decisions, plaintiffs, represented by the same counsel as the Shimotas, bring this action before the court. This court has already ruled that lump-sum credits from the CSRS are not separate contracts, and are subject to taxation under 26 U.S.C. § 72(e). Plaintiffs attempt to re-litigate the exact same issue that was raised in *Shimota;* this court declines to reinterpret the issue.

■ Even if this court were permitted to ignore the Federal Circuit's previous ruling in *Shimota,* the outcome in the current case would not change. Lump-sum credits from the CSRS do not qualify as payments from a separate contract as required under 26 U.S.C. § 72(d).

This court, as well as the Tax Court, has already ruled that lump-sum credits issued in accordance with the CSRS are subject to taxation under 26 U.S.C. § 72(e)(2). *See Shimota v. United States,* 21 Cl.Ct. 510 (1990), *aff'd,* 943 F.2d 1312 (Fed.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992); *Guilzon v. Commissioner,* 97 T.C. 237, 1991 WL 146887 (1991), *aff'd,* 985 F.2d 819 (5th Cir.1993); *Simmons v. Commissioner,* 65 T.C.M. (CCH) 1887, 1993 WL 29138 (1993). In order to avoid the tax liability imposed under 26 U.S.C. § 72(e)(2), plaintiffs argue that the "alternative form of annuity" is a separate contract under 26 U.S.C. § 72(d). To qualify directly under § 72(d) the CSRS must be a defined contribution plan.

A defined contribution plan is "a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the partici-

---

**14.** The separate contracts doctrine was enacted by the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, and TAMRA, and is embodied in 26 U.S.C. §§ 72(d) and 414.

**15.** 26 U.S.C. § 72(e) applies to amounts received under an annuity contract, but not received as an annuity. Any amount that is received "on or after the annuity starting date, shall be included in gross income." 26 U.S.C. § 72(e)(2)(A).

pant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 26 U.S.C. § 414(i). To qualify as a defined contribution plan, the Code requires that two criteria be met: (1) an individual accounting; and (2) the benefit based solely on the amount contributed. If either of these criteria is not met, the plan is classified as a defined benefit plan. 26 U.S.C. § 414(j).[16]

Plaintiffs here fail to show that the CSRS satisfies the second requirement of a defined contribution plan, a basing of the benefit solely on the amount contributed to the participants account. Although it is true that the plaintiffs received a lump-sum credit equal to the amount that they deposited, the lump-sum credit is only one part of the total retirement plan. The "alternative form of annuity" is segregated into two parts which are "actuarially equivalent to the present value" of the normal annuity offered under the CSRS. 5 U.S.C. § 8343a(c). Plaintiffs contention cannot be true if the CSRS adheres to this requirement. If the retiree's benefits were based solely on other contributions, it would be mathematically impossible for the retiree to receive a lump-sum credit equal to his or her contributions and still receive an annuity. If this were to happen, a retiree who elects the "alternative form of annuity" would receive a package with a greater present value than the retiree who just receives an ordinary annuity. Since the two programs, the alternative form of annuity and the ordinary annuity, must be actuarially equivalent, some of the benefit of the alternative form of annuity, of necessity, must be based on funds in addition to the employee's contributions.

Even though the CSRS is a defined benefit plan it can still qualify under 26 U.S.C. § 72(d) through 26 U.S.C. § 414(k). Section 414(k) provides:

A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance

of the separate account of a participant shall—

. . . .

(2) for purposes of section 72(d) ... be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan.

26 U.S.C. § 414(k). Thus, to qualify for separate contract treatment under § 72(d), the CSRS must have a separate accounting and a benefit derived from employer contributions based partially on the employee's contributions. *Id.*

Both parties urge the court to consider I.R.S. Notice 87–13, and its interpretation of the separate account requirement. That Notice anticipates an account to which "gains, losses, distributions, forfeitures, and other credits are allocated." I.R.S. Notice 87–13, 1987–1 C.B. 432, 438 (Q & A 14). This Notice is consistent with Rev.Rul. 79–259 which states that for certain defined benefit plans to qualify under § 414(k), the separate account must resemble a defined contribution plan under § 414(i). Rev.Rul. 79–259, 1979–2 C.B. 197, 198.

The records of employee contributions under the CSRS do not resemble accounts under a defined contribution plan. Earnings on an employee's contributions are not tracked because they are not significant to the employee's retirement benefit which is based on average pay and years of service. *See* 5 U.S.C. § 8339. Thus, these records fail to satisfy § 414(k). *Contra Guilzon v. Commissioner,* 985 F.2d 819, 822–23 (5th Cir. 1993); *Montgomery v. United States,* 829 F.Supp. 1061, 1065 (S.D.Ind.1993).

Focusing on the second requirement under 26 U.S.C. § 414(k)—that the plan provide "a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant"—plaintiffs argue that the alternative form of annuity is a benefit ultimately derived from employer

---

16. 26 U.S.C. § 414(j) provides:

For purposes of this part, the term "defined benefit plan" means any plan which is not a defined contribution plan.

contributions because the overall annuity amount is fixed regardless of the amount of employee contributions. Plaintiffs add that the alternative form of annuity is based partly on the balance of the separate account of a participant since the lump-sum credit is equal to the participant's contributions. Thus, the plaintiffs conclude the second requirement of § 414(k) is satisfied.

Plaintiffs' reasoning is flawed. Plaintiffs have only underscored the obvious—that neither employee nor employer contributions determine the amount of a CSRS participant's annuity. Rather, the benefit is determined by the employee's average pay and years of service. 5 U.S.C. § 8339(a).[17] Under 5 U.S.C. § 8334, the employing agency is required to make payments to the Fund for each employee participating in the CSRS. However, these payments in no way affect the amount of benefit that the employee will receive on retirement. The employee's annuity is based on the employee's years of service and average pay. *Id.* Of course, the employer's contributions provide a source of funds from which annuity payments can be made, as do employee contributions, but agency contributions do not determine the size of the payment or the employee's entitlement to the payment. *See* 26 U.S.C. §§ 8334, 8339. In other words, the amount of the agency's contributions could be changed by statute, but this would neither increase nor decrease the employee's bene-

fits. *See Guilzon*, 985 F.2d at 823 ("Mr. Guilzon's retirement plan did not provide a benefit derived from employer contributions as required by section 414(k)."). *Contra Montgomery*, 829 F.Supp. at 1065 (S.D.Ind. 1993) (holding that the phrase "derived from employer contributions" is satisfied if the "benefit received or obtained financial support from employer contributions"). Thus, the alternative form of annuity fails the second requirement of § 414(k). *But cf. Montgomery*, 829 F.Supp. at 1065–66 (S.D.Ind. 1993) (rejecting plaintiffs' argument, but holding that *the monthly annuity payment* under the alternative form of annuity is a benefit derived from employer contributions *and* based partly on the balance of the separate account of the participant).[18]

The CSRS fails to satisfy either 26 U.S.C. § 414(i) or 26 U.S.C. § 414(k), and must, therefore, be treated as a defined benefit plan under 26 U.S.C. § 414(j). Under § 414(j), a defined benefit plan is not entitled to treatment as a separate contract, and is, therefore, taxable under 26 U.S.C. § 72(e)(2). *Shimota*, 21 Cl.Ct. at 522–23. This holding is consistent not only with this court's prior holding in *Shimota*, but also the Tax Court's and Fifth Circuit's decisions in *Guilzon*, as well as Treas.Reg. § 1.72–2(a)(3)(i).[19] Plaintiffs are entitled to receive their contributions to the Fund tax-free, but their return of capital is spread over the life of the annuity. 26 U.S.C. § 72(b).[20]

---

**17.** 5 U.S.C. § 8339(a) provides:

> [T]he annuity of an employee retiring under this subchapter ... is—
>   (1) 1½ percent of his average pay multiplied by so much of his total service as does not exceed 5 years; plus
>   (2) 1¾ percent of his average pay multiplied by so much of his total service as exceeds 5 years but does not exceed 10 years; plus
>   (3) 2 percent of his average pay multiplied by so much of his total service as exceeds 10 years.

**18.** The court is not persuaded by the conclusion of the United States District Court for the Southern District of Indiana in *Montgomery*. This court cannot accept the District Court's reasoning that the annuity payment is *based* partly on the balance of the separate account of the participant, because the amount of the lump-sum credit is used to calculate the amount by which the basic annuity rate is reduced, so that the two

options (the basic annuity and the alternate form of the annuity) will have the same present value.

**19.** Treas.Reg. § 1.72–2(a)(3)(i) states that:

> For purposes of applying section 72 to such distributions [CSRS and other retirement programs under §§ 402 and 403] and payments ... each separate program of the employer consisting of interrelated contributions and benefits shall be considered a single contract.

**20.** Plaintiffs' citations to legislative history are not persuasive. This court observed in *Shimota* that resorting to legislative history was unnecessary in view of the plain meaning of 26 U.S.C. §§ 72(e)(2) and 402(a). *Shimota*, 21 Cl.Ct. at 519 n. 22 (citing *Ocean Drilling & Exploration Co. v. United States*, 220 Ct.Cl. 395, 600 F.2d 1343 (1979); *J.H. Miles & Co. v. United States*, 3 Cl.Ct. 10 (1983)). The court did, however, find that the legislative history of the repeal of the "three-year basis recovery rule" confirmed its

## B. *Deemed Redeposit.*

■ The court now focuses on whether the "deemed" redeposit portion of the lump-sum credit is taxable under 26 U.S.C. § 72(e)(2), which allows for the taxability of amounts received under an annuity contract, but not received as an annuity. On October 30, 1987, the time of Mrs. Pietsch's retirement, the OPM "deemed" that Mrs. Pietsch redeposited $37,882, of which $5,612 was a "deemed" interest payment. On the same day, the OPM "deemed" Mrs. Pietsch to have received back from the OPM $37,882. At the time of Mrs. Pietsch's retirement, the OPM actually paid her $409.36, the amount of her post–1982 contributions less withheld taxes. The "deemed" redeposit allowed Mrs. Pietsch to receive credit for her entire federal service, thereby increasing her monthly annuity from $65.00 to $1,809.00. The Pietsches contend that the "deemed" redeposit is not taxable as a lump-sum credit payment because it was not received by Mrs. Pietsch, either actually or constructively, as required by 26 U.S.C. § 72(e). Rather, they argue that the "deemed" redeposit credit resulted in an increased monthly annuity and should be taxed on a pro-rated basis under 26 U.S.C. § 72(b), when the payments are received.

Prior to 1986, the receipt of a lump-sum credit voided the participant's right to an annuity under the CSRS. *Abubot for Estate of Abubot v. United States,* 1 Cl.Ct. 296 (1982). The lump-sum credit was treated as a tax-free return of previously taxed contri-

butions under the IRS regulations then in effect.[21] In 1986, Congress enacted the "alternative form of annuity" provision in 5 U.S.C. § 8343a. In order to qualify under this section, and receive a sizeable monthly annuity, Mrs. Pietsch was required to redeposit her previously withdrawn contributions as well as interest covering the period when she was not a federal employee. To ease the administrative burden associated with Mrs. Pietsch actually depositing $37,882 and then having the OPM return this amount to Mrs. Pietsch, the OPM "deemed" Mrs. Pietsch to have made the redeposit, without any money actually changing hands. *See* 5 C.F.R. Part 831.

If Mrs. Pietsch had been required to actually redeposit the $37,882, and then receive the same amount back, the lump-sum credit would be taxable under 26 U.S.C. § 72(e). *See Shimota,* 21 Cl.Ct. at 518. The question only arises because no money actually changes hands.

The Pietsches ask this court to rule that without the formal process of money actually changing hands, no actual or constructive receipt occurs and, therefore, the money is not taxable. The court refuses to adopt such a policy. The same outcome would result whether the transaction actually occurred or was only "deemed" to have occurred. On October 30, 1987, the OPM credited Mrs. Pietsch with redepositing her previous lump-sum credit, plus interest, and the OPM did not experience any change in their cash balance. In returning the lump-sum credit to

holding. *Id.* at 524. The court noted that it would be incongruous for the same Congress, which determined that allowing certain employees to recover their entire investment in the first three years of retirement provided unfairly favorable tax treatment, to allow these same employees to recover their entire investment in one year. *Id.*

Here, plaintiffs cite to a report by the Joint Committee on Taxation explaining the Tax Reform Act of 1986 and a House committee report discussing the Omnibus Budget Reconciliation Act of 1990. *See* H.R.Rep. No. 881, 101st Cong., 2d Sess. 170, 186, (1990) *reprinted in* 1990 U.S.C.C.A.N. 2017, 2178, 2194; STAFF OF JOINT COMM. ON TAXATION, 99th CONG., 2d SESS., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1986 724 (Comm.Print 1986). Plaintiffs attempt to establish a nexus between the repeal of the basis recovery rule and tax treatment of the lump-sum

credit received under the alternative form of annuity which is contrary to the court's conclusion in *Shimota.* In order to achieve this, plaintiffs urge the court to consider these two reports, from two different committees, each relating to distinct legislation, as interrelated because one (the Joint Committee Report) discusses the separate contract doctrine, and the other discusses the alternative form of annuity. Plaintiffs' argument fails to persuade the court, as neither document independently suggests the relationship plaintiffs advocate. *Cf. Guilzon,* 985 F.2d at 823 n. 11.

**21.** The Tax Reform Act of 1986 and TAMRA allow for the tax-free return of capital over the life of the annuity, instead of all at once as allowed under the older versions of the Tax Code. 26 U.S.C. § 72(b).

Mrs. Pietsch, the OPM and the IRS recharacterized the amount she received from being entirely employee contributions to being partially employee contributions. *See* 26 U.S.C. § 72(b). Since the OPM adopted the procedure only to simplify the administrative process, Mrs. Pietsch's "deemed" redeposit should receive treatment identical to an actual redeposit. For this reason, Mrs. Pietsch's "deemed" redeposit is an amount received under an annuity contract, but not received as an annuity, and, therefore, it is taxable under 26 U.S.C. § 72(e)(2). *Shimota,* 21 Cl. Ct. at 518.

## C. *Deemed Deposit.*

Turning to Mr. Johns's "deemed" deposit, the court notes at the outset that Mr. Johns never actually received the $3,665 in question. Upon his retirement and election of the "alternative form of annuity," he received $35,233.53, the amount of his contributions, plus a reduced annuity. The OPM, however, informed Mr. Johns that his taxable income included both the actual lump-sum credit, as well as the "deemed" deposit. In accordance with the OPM notification, Mr. Johns reported $38,898.53, attributable to the lump-sum credit and "deemed" deposit, as gross income on his 1987 income tax return.

Mr. Johns argues that he never actually or constructively received the $3,665, and the amount should be taxed as part of his monthly annuity payments on a pro-rated basis under 26 U.S.C. § 72(b) instead of § 72(e)(2) as part of his lump-sum payment.

■ Defendant contends that Mr. Johns is not entitled to a refund because he did not notify the Commissioner as required by Treas.Reg. § 301.6402–2.

§ 301.6402–2 Claims for credit or refund

. . . .

(b) Grounds set forth in claim

(1) . . . The claim must set forth in detail each ground upon which a credit or refund is claimed [and] the facts sufficient to appraise the Commissioner of the exact basis thereof.

Defendant claims that the Johnses's 1040X (amended return) dated April 27, 1988, did not mention the "deemed" deposit. Defendant contends that the Johnses' amended return requested a deduction based only on the lump-sum credit. Defendant concludes that since the Johnses failed to mention the "deemed" deposit, they are barred from any recovery at all. Treas.Reg. § 301.6402–2. Defendant ignores the fact that the Johnses filed a second 1040X on October 22, 1990, within the three-year limitation period imposed by 26 U.S.C. § 6511.[22] In the second amended return, the Johnses did request a refund of the taxes they paid on the "deemed" deposit, satisfying the requirements of Treas.Reg. § 301.6402–2.

This court must also reject the position advanced by Mr. Johns, that the "deemed" deposit should be taxed on a pro-rated basis, and adopt a position first advanced by defendant in its November 24, 1992 response-reply brief, that the "deemed" deposit is to be treated as a lump-sum credit and taxed according to 26 U.S.C. § 72(e).

In order for Mr. Johns to receive credit for his years of service covering 1957–1963, either he would be required to contribute the funds himself, or the OPM must deem that he did. 5 U.S.C. § 8339(i). If Mr. Johns had made the deposit himself, upon his retirement he would have received an equal amount back as a lump-sum credit, partially taxable and partially non-taxable. *See Shimota,* 21 Cl.Ct. at 518.

■ In order for an amount to be included in gross income (for a cash-basis taxpayer) in a given year, that amount must have been either actually or constructively received in that year, Treas.Reg. § 451–1(a), or provide an economic benefit. *Goldsmith v. United States,* 218 Ct.Cl. 387, 586 F.2d 810 (1978).[23] Since Mr. Johns did not actually receive the $3,665 in 1987, the only way that it can be included in Mr. Johns's gross income is if he constructively received it in 1987 or if it created an economic benefit for him in 1987.

Cash-basis taxpayers are required to report a sum as income in the year of its

---

22. The Johns' 1987 tax return was filed on April 11, 1988.

23. Mr. Johns filed as a cash-basis taxpayer on his 1987 tax return.

receipt. To avoid the problem of taxpayers purposely delaying the receipt of funds from one year to another year when they are in a lower tax bracket, the IRS adopted the policy of constructive receipts. "[I]ncome is 'constructively received' by a cash-basis taxpayer when it is 'set apart for him or otherwise made available so that he may draw upon it any time' without 'substantial limitations or restrictions.'" *Goldsmith,* 218 Ct. Cl. at 396, 586 F.2d at 815, (quoting 26 U.S.C. § 451 (1954); Treas.Reg. § 1.451–2(a) (1957)). In this case, Mr. Johns was neither able to withdraw the $3,665 at "any time," nor use it free from "substantial limitations or restrictions." Mr. Johns can only use the money when the CSRS disperses a portion of it by way of his monthly annuity payment. Therefore, Mr. Johns had not constructively received the entire amount in 1987.

■ Since Mr. Johns neither actually nor constructively received the $3,665 in 1987, the court next considers whether the "deemed" deposit provided him with an economic benefit in 1987.

> The economic benefit doctrine does not depend for its applicability on whether the employee could receive cash by stretching out his hand. It is based on the theory that the promise to pay deferred compensation in the future in and of itself under certain circumstances may constitute an economic benefit or the equivalent of cash to be taxed currently at present value, if it can be valued currently with some exactness.

*Goldsmith,* 218 Ct.Cl. at 405, 586 F.2d at 820, (quoting McDonald, *Deferred Compensation: Conceptual Astigmatism,* 24 TAX L.REV. 201, 204 (1969)).

The $3,665 deemed deposit increased Mr. Johns' years of service to includ ⸱⸱ )57 through 1963. The addition to his y ، of service increased his monthly annuit ᵇut not the amount that he received as ₂ ₁p-sum credit.

When considering the taxability de-ferred compensation, the key quest is

whether the taxpayer received current economic benefit from the event in question. "The question is therefore whether any of the promises by [the employer] were ... economic benefits to the taxpayer in the years in question." *Goldsmith,* 218 Ct.Cl. at 405, 586 F.2d at 820. Goldsmith's employer deducted $450 a month from Goldsmith's salary to pay for a deferred compensation plan. This court determined that only those payments that resulted in a current economic benefit were taxable in a given tax year. *Id.* at 406, 586 F.2d at 821. The amounts that went to present benefits were taxable, while those that went to future benefits were not taxable until Goldsmith had a right to receive the deferred compensation. *Id.*

A similar approach was followed by the United States Court of Appeals for the Second Circuit in *United States v. Drescher,* 179 F.2d 863 (2d Cir.), *cert. denied* 340 U.S. 821, 71 S.Ct. 53, 95 L.Ed. 603 (1950). The court determined that Drescher was responsible for the tax consequences of annuities purchased for him by his employer. *Id.* at 864. The court based its conclusion on the fact that Drescher had a right to receive the annuities in the years of their purchase. *Id.*

Adopting the approach followed by this court in *Goldsmith* and the Second Circuit in *Drescher,* this court holds that Mr. Johns "deemed" deposit is taxable in 1987, the year of his retirement. In 1963, when the OPM made the "deemed" deposit, Mr. Johns did not have a right to receive his annuity. *Rafferty v. United States,* 210 F.2d 934 (3d Cir. 1954); *Steinberg v. United States,* 143 Ct.Cl. 1, 163 F.Supp. 590 (1958). Mr. Johns did not receive a right to his annuity payments until the time of his retirement. At that point, Mr. Johns received an economic benefit based on the present value of the increase of his annuity, the $3,665 "deemed" deposit. *See Goldsmith,* 218 Ct.Cl. at 405, 586 F.2d at 820. Because Mr. Johns received an economic benefit in 1987 from the "deemed" deposit, and its amount can be calculated with exactness, it is subject to taxation as any other lump-sum credit.

---

24. The $3,665 can be viewed as the cost an annuity with a benefit equal to the incre ⸱ in

Mr. Johns annuity.

Accordingly, plaintiffs' motion for summary judgment and cross-motion for summary judgment are denied and defendant's motion for summary judgment and cross-motion for summary judgment are granted.

The Clerk of the Court shall enter judgment dismissing plaintiffs' complaint. No costs.