**Carolyn J. GUILZON, Individually and as Executrix of the Estate of Edward J. Guilzon, Deceased, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 92–4229.**

United States Court of Appeals, Fifth Circuit.

March 15, 1993.

Rehearing Denied April 15, 1993.

---

Thomas J. O'Rourke, Virginia H. Johnson, Shaw, Bransford & O'Rourke, Washington, DC, for petitioner-appellant.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Bruce R. Ellisen, Atty., Gary R. Allen, Chief, Richard Farber, Atty., Appellate Section, Shirley D. Peterson, Asst. Atty. Gen., James A. Bruton, Tax Div., Dept. of Justice, Washington, DC, for respondent-appellee.

Before POLITZ, Chief Judge, JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

This case calls on the Court to construe statutory provisions affecting the taxation of lump-sum benefits provided to Civil Service retirees. The United States Tax Court held that a portion of lump-sum payments are taxable. We affirm.

### I. Facts and Procedural History

Edward Guilzon worked for the United States Army Corps of Engineers as a civil servant for more than thirty years. Throughout that thirty-year period, Mr. Guilzon contributed a percentage of his gross salary to the Civil Service Retirement System (CSRS). He paid taxes on all of those contributions, which, upon his retirement in January of 1987, totaled $36,820.35. The CSRS provided Mr. Guilzon two alternatives for selecting retirement benefits, a regular annuity and an alternative annuity with a lump-sum credit. He chose the latter. The amount of Mr. Guilzon's lump-sum credit equaled his $36,820.35 contributions plus a deemed deposit amount of $246. The total lump-sum payment was therefore $37,066.35. When the Office of Personnel Management informed Mr. Guilzon about his retirement options, it provided him information on the federal income tax implications of his decision. That information, located on a form entitled "Federal Income Tax Information," advised Mr. Guilzon that "most of [his] lump sum credit [was] taxable income under Federal tax law, a portion is excludable income." The form further stated in bold, capitalized letters, "[i]t is important to remember that if you elect an alternative annuity and lump-sum payment, only about 5 to 15 percent of the lump-sum credit ... is excludable income for purposes of computing federal income tax." The form advised Mr. Guilzon to consult a tax advisor or the Internal Revenue Service about his tax liability for the 1987 tax year.

Although Mr. Guilzon signed and dated the tax information form, the Guilzons chose not to report any portion of the lump-sum credit as income for the 1987 tax year. Noting the discrepancy during an audit, the Commissioner of Internal Revenue notified the Guilzons in 1990 that they owed an additional $8,258.00 in taxes for 1987. The Guilzons contested that decision by seeking a redetermination in the Tax Court. They presented several arguments for reversal of the Commissioner's decision. However, the tax court agreed with the Commissioner. That court discussed all but one of the Guilzons' arguments and held that the Guilzons were liable for the deficiency. The Guilzons appealed to this Court, preserving for our review only the question which the Tax Court failed to address: whether applicable CSRS and Tax Code statutes exempted Mr. Guilzon's lump-sum credit from taxation.[1]

### II. Discussion

The Guilzons argue that the Tax Court erred by declining to construe and

---

1. The Guilzons do not dispute the amount of taxes allegedly due. The only issue before this Court is whether the entire lump-sum credit is excludable from taxes.

apply applicable CSRS and federal income tax statutes. They claim that a proper construction of those provisions exempts the lump-sum payment from taxation. The principal statute in this case is section 72(d) of the Tax Code.[2] It provides that "[f]or purposes of this section, employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract." 26 U.S.C. § 72(d). The Guilzons correctly argue that the lump-sum credit was a return of their contributions to the CSRS.[3] However, section 72(d) does not exempt all contributions from taxation. Only contributions which are part of a defined contribution plan are excludable from income for federal income tax purposes.[4] Thus, in order for the Guilzons to escape the tax burden claimed by the Commissioner [hereinafter Government], they must prove that the lump-sum payment qualifies as a defined contribution plan.

There are three overall plans under which all retirement plans fall: the defined contribution plan,[5] the defined benefit plan,[6] and a hybrid plan. Hybrid plans are treated, in part, like a defined contribution plan for tax purposes. Section 414(k) explains the treatment of the hybrid plan:

A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant shall ...

(2) for purposes of section[ ] 72(d) (relating to treatment of employee contributions as separate contract) ... be treated

as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan.

26 U.S.C. § 414(k).

The Guilzons claim that the CSRS retirement plan qualifies, in part, as a defined contribution plan under section 414(k). The Government, countering that argument, proffers two reasons that the lump-sum payment does not qualify under section 414(k). The Government claims first that Mr. Guilzon's lump-sum credit was not a separate account and second that his retirement benefits were not derived from employer contributions. Taxpayers must prove that both of these conditions are met in order to receive the special tax treatment afforded by section 72(d).

## A. *Separate Account*

The proper construction of the phrase "separate account of a participant," located in section 414(k), is an issue of first impression before this Court. That section explicates when a defined benefit plan may be treated, in part, like a defined contribution plan. In essence, it provides that when a defined benefit plan has certain defined contribution plan characteristics, the portion which *resembles* the defined contribution plan will be *treated* like a defined contribution plan under section 72(d). Thus, reading subsection (k) with an eye toward the statutory definition of a defined

---

**2.** Unless otherwise stated, the statutes discussed herein are United States Tax Code provisions, located in the twenty-sixth chapter of the United States Code.

**3.** CSRS provisions define "lump-sum credit" as "the unrefunded amount consisting of (A) retirement deductions made from the basic pay of an employee or Member ..." 5 U.S.C. § 8331(8). The Guilzons did not raise before this Court the issue of whether the lump-sum was exempt because it was not income, but a return of their investment.

**4.** Generally, lump-sum payments which are paid pursuant to an annuity contract are taxable under section 72(e). Subsection 2 states that such payments, "[i]f received on or after the annuity

starting date, shall be included in gross income." 26 U.S.C. § 72(e)(2).

**5.** A defined contribution plan, defined in section 414(i) of the Tax Code, is "a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 26 U.S.C. § 414(i).

**6.** The defined benefit plan, which is taxable under section 72(e), includes all plans which are not defined contribution plans. 26 U.S.C. § 414(j).

contribution plan, it seems clear that the section 414(k) reference to "the separate account of a participant" is the same as the section 414(i) reference to "an individual account for each participant." Indeed both parties so assume.

Section 414(i) states that such an account is "based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." In this case, the CSRS kept separate records of each employee's contributions; however, the contributions themselves were not kept separately from other employees' contributions. The Government does not contend separate accounting, rather than physical separation of the funds, prevents a finding that a separate account existed.

■ The Government does assert, however, that no separate account existed because Mr. Guilzon's contributions gained no interest and suffered no losses while in his CSRS account. In the Government's view, if an account is not allocated actual earnings and losses, it is not a separate account. The Government bases this argument on a Notice which construed the term "separate account" in light of section 72(e)(9), the predecessor of section 72(d).[7]

Citing *Foil v. Commissioner*, 920 F.2d 1196, 1201 (5th Cir.1990), and a host of other cases,[8] the Government urges the Court to defer to the Commissioner's definition as found in the I.R.S. Notice.

However, neither *Foil* nor any of the other cited cases discusses Notices. They all address the proper review of Revenue Rulings, which by regulation are to some degree authoritative.[9] Notices are not. *See* 26 C.F.R. § 1.6661–3(b)(2).[10] Even if Notices had the same weight as Revenue Rulings, this Court made clear in *Foil* that we will look to Revenue Rulings only when a statute and its legislative history are *completely* ambiguous. *Foil*, 920 F.2d at 1201 ("[W]e will disregard a Ruling if the Ruling conflicts with the statute it supposedly interprets, with the statute's legislative history, or if the Ruling is otherwise unreasonable.... Although we are not bound by the criteria promulgated in these Revenue Rulings, we give them special consideration *because* the statute and legislative history are *so completely indefinite*." (emphasis added)).

■ The language of section 414(i) is unambiguous. It states that a separate account consists of the employee's contributions and *"any* income, expenses, gains and losses, and *any* forfeitures ... which

7. That Notice stated:
 For purposes of applying section 72(e)(9) to a plan, a defined benefit plan is to be treated as a defined contribution plan to the extent that employee contributions (and earnings thereon) to the defined benefit plan are maintained under a separate account to which actual earnings and losses are allocated. If employee contributions to a defined benefit plan are credited with a stated rate of interest, such employee contributions (and earnings) are not to be treated as maintained under a separate account for purposes of section 72(e)(9). I.R.S.Notice 87–13, 1987–1 C.B. 432, 437–439 (Q & A 14).

8. *United States v. Burke,* —— U.S. ——, —— n. 13, 112 S.Ct. 1867, 1874 n. 13, 119 L.Ed.2d 34 (1992); *Davis v. United States,* 495 U.S. 472, 484, 110 S.Ct. 2014, 2021–22, 109 L.Ed.2d 457 (1990); *United States Trust Co. v. IRS,* 803 F.2d 1363, 1370 n. 9 (5th Cir.1986) *Miami Beach First Nat'l Bank v. United States,* 443 F.2d 475, 478 (5th Cir.), *cert. denied,* 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971).

9. We have found no Revenue Ruling which expands the requirements for separate accounts in the manner which the 87–13 Notice does. Indeed, one Revenue Ruling merely states that "for purposes of section 414(k), the plan provisions regarding a participant's separate account must satisfy the requirements of a defined contribution plan under section 414(i)." Rev.Rul. 79–259, 1979–2 C.B. 198. Our holding is consistent with that Ruling.

10. The Treasury Department has noted this distinction by conferring Revenue Ruling status on Notices which it has deemed authoritative. *See e.g.* I.R.S.Notice 89–99, 1989–38 C.B. 4 (stating that that particular Notice "may be relied upon in the same manner as a revenue ruling or a revenue procedure"). Although we express no opinion on the authoritativeness of a Notice with a proviso like that in I.R.S.Notice 89–99, we note that Notice 87–13 has no such stipulation. Thus, by the Government's own standards, the 87–13 Notice does not have weight equivalent to that of a Revenue Ruling.

*may* be allocated to such participant's account." 26 U.S.C. § 414(i). By using the words "any" and "may" Congress clearly and unambiguously made the allocation of earnings and losses to a participant's account optional. It is well-settled that the word "may" is a permissive term. If allocating gains and losses were *required,* Congress would surely have used mandatory language, providing that the earnings and losses *"shall* be allocated" rather than asserting that such earnings and losses *"may* be allocated." Based upon the clear language of the statute, we conclude that an account can qualify as a separate account without having earnings and losses allotted to it. Because Mr. Guilzon's contributions were individually accounted for, we find that the separate account requirement was satisfied in his case.

### B. Derivation from Employer Contributions

■■■ Because the Government's first argument fails, we must turn to its second argument. It claims that Mr. Guilzon's retirement benefits were not derived from employer contributions, as required by section 414(k). We agree. Section 414(k) expressly requires that the "defined benefit plan ... provide[ ] a *benefit derived from employer contributions."* 26 U.S.C. § 414(k) (emphasis added). Mr. Guilzon's retirement benefits were in no way based upon employer contributions. The CSRS does not provide for employer contributions. CSRS retirement benefits are based upon the employee's contributions, average salary, and years of employment. 5 U.S.C. § 8339. Indeed, the statute which specifically governs the type of annuity chosen by Mr. Guilzon explicitly states that "an employee or Member may, at the time of retiring ... elect annuity benefits under this section ... *based on the service of the employee or Member."* 5 U.S.C. § 8343a(a) (emphasis added). Reading the CSRS statutes—5 U.S.C. §§ 8339, 8343a—consistently with the applicable Tax Code statutes—26 U.S.C. §§ 72(d), 414(k)—leaves no other conclusion but that Mr. Guilzon's retirement plan did not provide a benefit derived from employer contributions as required by section 414(k). With that conclusion, the Guilzons' house of cards falls.[11]

---

11. The Guilzons assert that the legislative history requires a different conclusion. We disagree for several reasons. First, one committee report proffered by the Guilzons was actually submitted four years *after* the 1986 amendment to section 72(d). H.R.Rep. No. 101–881 101st Cong., 2d Sess. 170, 186, U.S.Code Cong. & Admin.News 1990, pp. 2017, 2178, 2194. It clearly does not represent the intent of the 1986 Congress which enacted the Tax Reform Act of 1986, and it is, in no sense, true legislative history. Indeed, as this Court aptly stated in *Rogers v. Frito–Lay, Inc.:*

> The retroactive wisdom provided by the subsequent speech of a member of Congress stating that yesterday we meant something that we did not say is an ephemeral guide to history.... What happened after a statute was enacted may be history and it may come from members of the Congress, but it is not part of the legislative history of the original enactment.

611 F.2d 1074, 1080 (5th Cir.), *cert. denied sub nom. Moon v. Roadway Express, Inc.,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980); *see also Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979) (stating that "[i]t is the intent of the Congress that enacted [the section] ... that controls") (quoting *Teamsters v. United States,* 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52

L.Ed.2d 396 (1977). Regardless, we fail to find the language to which the Guilzons refer propitious to their position.

Second, the legislative history which is actually applicable to the 1986 amendment to § 72 provides no support for the Guilzons at all. The key language in a report prepared by the staff of the Joint Committee on Taxation states that "[u]nder the [1986 Tax Reform] Act, employee contributions to a defined contribution plan or a separate account of a defined benefit plan[FN 24] ... may be treated as a separate contract for purposes of section 72." Staff of Joint Comm. on Taxation 99th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1986 724 (Comm.Print 1986). While exempting lump-sum payments from taxes may have been the intent of the staff of the Joint Committee, the staff members clearly recognized that absent changes to other statutes this intent would not be effectuated. In footnote 24 the staff commented that "[a] technical correction may be needed so that the statute reflects this intent." *Id.* For reasons unbeknownst to this Court, Congress did not adjust the applicable statutes—namely §§ 414(i) or (k)—to reflect the staff's intent. This Court refuses to enact judicially what Congress could have enacted legislatively.

Finally, and most importantly, Fifth Circuit law is crystal clear that when, as here, the

Without meeting the requirements of section 414(k), Mr. Guilzon's retirement plan cannot be treated as a hybrid plan, consisting of both a defined contribution plan and a defined benefit plan. All of his retirement benefits, including his lump-sum credit, fit only in the category of a defined *benefit* plan. Section 72 does not provide special treatment of benefits under a defined benefit plan. That provision only excludes from taxation employee contributions which are part of a defined *contribution* plan. The Guilzons' lump-sum credit therefore does not qualify for section 72(d) protection, and absent that protection, the lump-sum payment is subject to the tax computations outlined in section 72(e). Thus, that portion of the Guilzons' lump-sum credit for which no taxes were paid was indeed taxable. The Guilzons should have reported it as income for the 1987 tax year. Having failed to do that, they remain liable for the taxes due on that amount—$8,258.00.

### III. Conclusion

For the aforementioned reasons, the decision of the Tax Court is

AFFIRMED.

language of a statute is unambiguous, this Court has no need to and will not defer to extrinsic aids or legislative history. *Swearingen v. Owens–Corning Fiberglas Corp.*, 968 F.2d 559, 562 (5th Cir.1992). Clear statutory language is dispositive. To paraphrase Justice Holmes' oft-quoted statement, we do not inquire what Congress meant; we only ask what it said. *See* Oliver W. Holmes, *The Theory of Legal Interpretation*, 12 Harv.L.R. 417, 419 (1898).