MAX L. GREEN AND KATHRYN L. GREEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 6402-91
United States Tax Court
T.C. Memo 1994-340; 1994 Tax Ct. Memo LEXIS 344; 68 T.C.M. (CCH) 167; July 25, 1994, Filed *344 Decision will be entered for respondent. For petitioners: LeRoy Boyer. For respondent: Elizabeth Downs. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioners' 1987 Federal income tax in the amount of $ 7,647. The sole issue herein involves the proper treatment of the lump-sum payment to petitioner Max L. Green from the U.S. Civil Service Retirement and Disability Fund (the fund). This case was submitted fully stipulated pursuant to Rule 122(a). [1] All of the facts stipulated are so found. The stipulation of facts and attached exhibits are incorporated by reference. Petitioners resided in Tuttle, Oklahoma, when they filed their petition in this case. Max L. Green (Mr. Green) was a Federal employee who worked for the Federal Aviation Administration for more *345 than 30 years before he retired on February 1, 1987. He made mandatory, after-tax, employee contributions to the fund which totaled $ 34,434.31 as of the date of his retirement. Mr. Green was 55 years of age and satisfied the Federal civil service requirements necessary to receive an annuity under 5 U.S.C. section 8336(a)(1988) when he retired. Effective February 1, 1987, he was entitled to a gross monthly annuity of $ 1,748. In a written notice, dated May 4, 1987, the U.S. Office of Personnel Management notified Mr. Green that an alternative annuity, with a lump-sum payment, was available under 5 U.S.C. section 8343a(b) (1988). Under this election, an employee receives a payment of the employee's "lump-sum credit", which is the "unrefunded amount consisting of * * * retirement deductions made from the basic pay of an employee". 5 U.S.C. sec. 8331(8)(A) (1988). Due to that election, the employee also receives a reduced monthly annuity payment. 5 U.S.C. sec. 8343a(b)(1)(B) and (c). On June 3, 1987, Mr. Green elected to receive his *346 retirement benefits in the form of a payment of a lump-sum credit and a reduced annuity. [2]
As a result of his election, Mr. Green received in 1987 a lump-sum payment equal to his contributions of $ 34,434.31 and a monthly annuity payment of $ 1,602.00, reduced from $ 1,748.00. He also received monthly annuity payments that totaled $ 16,020 in 1987. Based on their own computations, petitioners reported $ 15,139 as gross income from the annuity payments on their 1987 Federal income tax return. They reported only $ 31,679 of the lump-sum payment on a Form 4972, Tax on Lump-Sum Distributions, attached to their return. On that form, they used the 10-year averaging method to calculate the amount of tax on the $ 31,679. On *347 August 22, 1991, petitioners filed a protective claim for refund on a Form 1040X, Amended U.S. Individual Income Tax Return, on the ground that the lump-sum payment of $ 34,434.31 was a nontaxable return of already taxed contributions. Respondent determined that the lump-sum amount received from the fund was only a partial distribution of Mr. Green's interest in his retirement plan and that, therefore, he was not entitled to use the 10-year averaging method. Respondent also determined that an additional $ 30,562.58 of the amounts received in 1987 was includable in petitioners' income. Respondent's determination reflected a reduction of the taxable portion of such amounts to take into account the pro rata portion of the $ 34,434.31 representing Mr. Green's contributions. The U.S. Civil Service Retirement System is one to which both the employer and the employee contribute. Under that plan, the employee is entitled to an annuity calculated by reference to his salary and years of service, and not to the contributions made by him or by his employer. At the time Mr. Green retired, he was entitled to, and did, elect to receive an "alternative form of annuity", consisting of an immediate *348 payment of a lump sum equal to his contributions and a reduced annuity calculated so that the present value of that annuity plus the lump-sum payment would equal the present value of the annuity to which he would otherwise be entitled. See Montgomery v. United States, 18 F.3d 500 (7th Cir. 1994), for a more detailed description of how the U.S. Civil Service Retirement System is implemented. The relevant statutory provisions involved herein are sections 72(d) and (e) and 414(i), (j), and (k). Section 72(d) and (e) provides in pertinent part: (d) Treatment of Employee Contributions under Defined Contribution Plans as Separate Contracts. -- For purposes of this section, employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract. (e) Amounts Not Received as Annuities. -- (1) Application of Subsection. -- (A) In General. -- This subsection shall apply to any amount which -- (i) is received under an annuity, endowment, or life insurance contract, and (ii) is not received as an annuity, if no provision of this subtitle (other than this subsection) applies with respect to such *349 amount.
* * * (2) General Rule. -- Any amount to which this subsection applies -- (A) if received on or after the annuity starting date, shall be included in gross income, or (B) if received before the annuity starting date -- (i) shall be included in gross income to the extent allocable to income on the contract, and (ii) shall not be included in gross income to the extent allocable to the investment in the contract.
Section 414(i), (j), and (k) provides in pertinent part: (i) Defined Contribution Plan. -- For purposes of this part, the term "defined contribution plan" means a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account. (j) Defined Benefit Plan. -- For purposes of this part, the term "defined benefit plan" means any plan which is not a defined contribution plan. (k) Certain Plans. -- A defined benefit plan which provides a benefit derived from employer contributions which is based partly on the balance *350 of the separate account of a participant shall -- * * * (2) for purposes of sections 72(d) (relating to treatment of employee contributions as separate contract), * * * be treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan * * *
Petitioners contend that Mr. Green's contributions were in a separate account which satisfied the definition of a "defined contribution plan" under section 414(i) and should be treated as a defined contribution plan under section 414(k), and that consequently its taxability is governed by section 72(d), i.e., that his receipt of the lump-sum credit in 1987 was simply a tax-free return of his contributions. Respondent counters that the requirements of sections 414(k) and 72(d) have not been satisfied and that petitioners are entitled to exclude from the aggregate of the lump-sum and annuity payments received in 1987 only the pro rata share of Mr. Green's investment, i.e., his contributions, with the remainder of that investment to be excluded pro rata from annuity payments in subsequent *351 years, as provided by section 72(b). In this connection, it is important to note that the issue herein is not whether Mr. Green is entitled to recover his contributions tax free but when he is entitled to such recovery. See Guilzon v. Commissioner, 97 T.C. 237, 239 (1991), affd. on other grounds 985 F.2d 819 (5th Cir. 1993). The proper method of taxing the lump-sum payment of contributions to the fund by an employee who retires and elects to receive an alternative annuity under 5 U.S.C. section 8343a (1988)[3] has been the subject of analysis and decision by several courts, including this Court. As will subsequently appear, with the exception of one U.S. District Court, whose decision was reversed on appeal, the position maintained by respondent herein has been sustained, although the courts have not been unanimous in the path they have followed to reach that result. A brief description of these decisions will provide the necessary background to the disposition of the instant case. *352 In Shimota v. United States, 21 Cl. Ct. 510 (1990), affd. 943 F.2d 1312 (Fed. Cir. 1991), the Claims Court (now the Court of Federal Claims) rejected the taxpayer's assertion that the lump-sum payment of his contributions was "separate and distinct" from the annuity payments to which he was entitled and that consequently the former payment was not received under an "annuity contract" to which section 72(e) applied. In so doing, the Claims Court held that the payment of the lump-sum credit was simply an advance payment on account of the annuity to which the taxpayer was entitled and consequently was taxable under section 72(e) to the extent that it and the annuity payments received during the taxable year exceeded the pro rata share of the taxpayer's contributions as provided by section 72(b). In view of this reasoning, the Claims Court did not reach the question of whether there was a "separate account" in respect of the taxpayer's contributions within the meaning of section 414(k). The decision of the Claims Court was affirmed by the Court of Appeals for the Federal Circuit on the basis of the "thorough and well-reasoned *353 opinion" of Judge Robinson of the Claims Court, and citing the decision of this Court in Guilzon v. Commissioner, supra, which, at that time, had not been the subject of action by the Court of Appeals for the Fifth Circuit. The opinion of the Claims Court in Shimota was the foundation of the decision of this Court in Guilzon v. Commissioner, supra, in which we adopted the reasoning of the Claims Court that the lump-sum payment was received under an annuity contract. We likewise did not consider the applicability of the "separate account" element of section 414(k). On appeal, the Court of Appeals for the Fifth Circuit concluded that there was a "separate account" within the meaning of section 414(k). However, the Court of Appeals affirmed our decision stating: Section 414(k) expressly requires that the "defined benefit plan * * * provide[] a benefit derived from employer contributions." 26 U.S.C. § 414(k) (emphasis added). Mr. Guilzon's retirement benefits were in no way based upon employer contributions. The CSRS [Civil Service Retirement System] does not provide for employer contributions. CSRS retirement benefits *354 are based upon the employee's contributions, average salary, and years of employment. 5 U.S.C. § 8339. Indeed, the statute which specifically governs the type of annuity chosen by Mr. Guilzon explicitly states that "an employee or Member may, at the time of retiring * * * elect annuity benefits under this section * * * based on the service of the employee or member." 5 U.S.C. § 8343a(a) (emphasis added). Reading the CSRS statutes -- 5 U.S.C. §§ 8339, 8343a -- consistently with the applicable Tax Code statutes -- 26 U.S.C. §§ 72(d), 414(k) -- leaves no other conclusion but that Mr. Guilzon's retirement plan did not provide a benefit derived from employer contributions as required by section 414(k). With that conclusion, the Guilzons' house of cards falls. [Guilzon v. Commissioner, 985 F.2d at 823; fn. ref. omitted.]
At this point, we think it should be noted that the Court of Appeals' statement that the Civil Service Retirement System does not provide for employer contributions is in conflict with *355 5 U.S.C. section 8334(a), see Hogan v. United States, 513 F.2d 170, 171 (6th Cir. 1975), and that Civil Service Retirement System retirement benefits are based on "the employee's contributions" expands 5 U.S.C. section 8339 which deals with the computation of the annuity only in terms of average salary and years of service. However, we are satisfied that these difficulties with the articulation of its position do not detract from the conclusion of the Court of Appeals for the Fifth Circuit that because the "alternative annuity benefit" provided for by 5 U.S.C. section 8343a is based on the service of the employee, the requirements of section 414(k) were not satisfied and therefore the lump sum payment of contributions was includable in income in the year received as provided in section 72(e). The most recent discussion of the issue involved herein is found in Montgomery v. United States, supra, in which the Court of Appeals for the Seventh Circuit reversed a decision by the District Court, 829 F. Supp. 1061 (S.D. Ind. 1993), *356 relied upon by petitioners on brief, which had sustained the position taken by petitioners herein. The Court of Appeals first concluded that the "Civil Service Retirement System is not a defined contribution plan, but a defined benefit plan." 18 F.3d at 501. It then went on to disagree with the "separate account" analysis of the Court of Appeals for the Fifth Circuit in Guilzon v. Commissioner, supra, see 18 F.3d at 502, but then articulated a broader reasoning for deciding that the provisions of section 414(k) had not been satisfied and the Government should therefore prevail: The investment-performance feature of defined contribution plans in essential (the point missed in the Guilzon opinion, which described the feature as optional). As far as we know, there are no defined contribution plans in which the employee's only entitlement is to the return of his contributions, with everything above that going to the employer. That would be the equivalent of lending money long term at zero interest. (Shades of the old "Christmas Club" accounts, but they were for a year at the longest.) It is not how pensions are *357 funded, and it is not what the alternative form of annuity created by 5 U.S.C. § 8343a contemplated. The alternative form did not create a hybrid consisting of a defined benefit component and a defined contribution component; it merely accelerated the payment of a portion of the annuity, a defined benefit. The fact that the amount of acceleration was tied to the amount of the employee's contributions did not create a defined contribution plan, for, to repeat, there is no such plan that simply returns the employee's contributions to him. The alternative form of annuity was a defined benefit plan with an acceleration feature arbitrarily tied to the employee's contributions but not on that account a defined contribution plan. [Montgomery v. United States, 18 F.3d at 502.]
In essence, the Court of Appeals for the Seventh Circuit reasoned that, because the taxpayer's benefits were determined on the basis of average salary and years of service and because the return of his contributions included no increment for earnings thereon by way of interest or otherwise, there was no benefit "based upon the balance of the *358 separate account" of the taxpayer as required by section 414(k). Or to put it another way, the return of a participant's contributions without any additional increment is simply not a separate "benefit" within the meaning of that section. The employee's contributions are simply the source, although not the exclusive source if they are inadequate to cover the defined benefit annuity to which the participant is entitled. See George v. United States, 30 Fed. Cl. 371, 380 (1994), in which the Court of Federal Claims also held that the payment of the lump-sum credit pursuant to the election of an alternative annuity did not satisfy the requirements of section 414(i) or (k) and was therefore taxable under section 72(e)(2). Thus, as the Court of Appeals for the Seventh Circuit viewed the situation, the return of the taxpayer's contribution was simply an advance payment of the annuity to which the employee was entitled, even though the Court of Appeals had concluded that its source was a separate account. We have carefully considered petitioners' arguments and have concluded that they cannot prevail against the decisions of this Court and those of the three Courts of Appeals, Claims *359 Court, and the Court of Federal Claims, even though, to some extent, they have differing strands of reasoning. We find the analysis of the Court of Appeals for the Seventh Circuit in Montgomery v. United States, supra, particularly persuasive and see no need to embellish its articulation. Under these circumstances, we find it unnecessary to resolve the apparent difference of opinion on the "separate account" element between this Court, the Court of Appeals for the Seventh Circuit, and the Court of Federal Claims, on the one hand, and the Court of Appeals for the Fifth Circuit on the other. Finally, we emphasize our earlier observation, namely, that the issue herein does not involve double taxation, as petitioners suggest; we are not called upon to decide whether Mr. Green is entitled to recover his contributions tax free, but when he is entitled to such recovery, see supra p. 7. In this context, our concluding observation in Guilzon v. Commissioner, supra at 243, is highly relevant: Finally we note that acceptance of petitioners' position herein would, to say the least, produce an anomalous result. *360 The same Congress that enacted the changes in the provisions covering the CSRS also (and at the same session) repealed the provisions of section 72(d) permitting the tax-free recovery of contributions over the first 3 years of payment. See sec. 1122(c)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2467. To conclude that the same Congress intended to provide special treatment for CSRS beneficiaries would carry with it the implication that Congress acted eccentrically. This we are not prepared to do in the absence of specific language which leaves us with no alternative. See Dunn Trust v. Commissioner, 86 T.C. 745, 755 (1986).
Having disposed of petitioners' contention that the payment of the lump-sum credit was not tax free, i.e., entirely excludable from gross income in 1987, we now turn to petitioners' alternative argument that they are entitled to 10-year income averaging in respect of that payment. There is no dispute between the parties that Mr. Green meets the personal eligibility requirements of section 402(e)(4)(A) in respect of the receipt of the lump-sum credit. The question to be resolved is whether the amount in question *361 meets the requirement of that section that "the term 'lump sum distribution' means the distribution * * * within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient" (emphasis added). We think it clear that the payment of the lump-sum credit involved herein did not constitute a payment of the balance to Mr. Green's credit; he was also entitled to receive the reduced alternative annuity authorized by 5 U.S.C. section 8343a. We are satisfied that "the balance to the credit of an employee" was intended to include all sums payable to the employee and that there should be no separation of accounts for this purpose. [4] We are reinforced in this conclusion by our earlier reasoning that the lump sum credit should not be treated as separate and apart from the rest of the payments to which Mr. Green was entitled for the purpose of determining the proper tax treatment under section 72(d) and (e), although we note that, even if we had reasoned to the contrary on that issue, it would not necessarily have controlled the meaning of "the balance of the credit" requirement of section 402(e)(4)(A). *362 At the time of the lump-sum distribution, Mr. Green was entitled to an annuity. His entitlement to the annuity was a single obligation under the Civil Service Retirement System. He chose to receive the amount to which he was entitled, i.e., the balance to his credit, in two parts: (1) An advance payment of that annuity, i.e., the payment involved herein, and (2) the remainder of that balance in the form of a reduced annuity. Both elements were parts of the single obligation. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In 1990, Congress added 5 U.S.C. sec. 8343a(f)↩, which suspended this election until Oct. 1, 1995, for almost all Civil Service Retirement System employees. Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 7001(a), 104 Stat. 1388, 1388-328.
3. An employee, who is separated from the service prior to the time where he is eligible to retire, can elect to receive the lump-sum payment of his contributions provided he waives his right to receive a future annuity. 5 U.S.C. sec. 8342 (1988)↩.
4. Compare the situation where an employee can, under appropriate circumstances, elect to receive a lump-sum payment in lieu of the right to any annuity. See supra↩ note 3.