90 F.3d 473
 78 A.F.T.R.2d 96-5479, 96-2 USTC P 50,389,
Pens. Plan Guide P 23922U
 Dale F. GEORGE, Marlene George, Theodore P. Gleiter,
Caroline D. Gleiter, John D. McLaurin, Marlene M. McLaurin,
Gene H. Neiderschmidt, Viola T. Neiderschmidt, John J.
Sandvick, Nancy E. Sandvick, Vincent Pietsch, Jr., Betty
Pietsch, William S. Johns, Lela H. Johns, Victoria A.
Shifano, Henry P. Tutchtone, Robert Wright, Maggie M.
Wright, James A. Becks, Helen B. Becks, and Jean T.
Muldowney, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 Nos. 94-5091, 94-5074.
 United States Court of Appeals,
Federal Circuit.
 July 17, 1996.
 
 Thomas J. O'Rourke, Shaw, Bransford and O'Rourke, of Washington, D.C., argued, for plaintiffs-appellants. With him on the briefs, was Virginia H. Johnson.
 Charles Bricken, Attorney, Appellate Section, Tax Division, Department of Justice, of Washington, D.C., argued, for defendant-appellee. With him on the brief, were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Chief, Appellate Section, and Bruce R. Ellisen, Attorney.
 Before ARCHER, Chief Judge, RICH, Circuit Judge, and NIES, Senior Circuit Judge.*
 ARCHER, Chief Judge.
 
 
 1
 Appellants[1] appeal from the judgments of the United States Court of Federal Claims denying their claims for refund of 1987 federal income taxes paid on lump-sum credit distributions made pursuant to 5 U.S.C. § 8343a to appellants from the Civil Service Retirement and Disability Fund. We affirm.
 
 BACKGROUND
 
 2
 None of the facts set forth in the opinion of the Court of Federal Claims, George v. United States, 30 Fed.Cl. 371 (1994), are in dispute and therefore they will not be fully repeated here. For purposes of this appeal the pertinent facts follow.
 
 A.
 
 3
 Appellants are retired federal employees who had participated in the Civil Service Retirement System (CSRS). During their working years, a percentage of appellants' basic pay was required to be contributed to the Civil Service Retirement and Disability Fund (Fund). 5 U.S.C. § 8334(a)(1). These contributions were deducted from the employees' after-tax income, and thus the amounts contributed were includable in their gross income for federal income tax purposes. The employer contributed an equal amount to the Fund. Id.
 
 
 4
 Upon retirement in 1987, the appellants elected to receive an alternative form of annuity, as provided for in 5 U.S.C. § 8343a, instead of the basic annuity described in 5 U.S.C. § 8339. Employees electing the alternative form of annuity were entitled to receive both an immediate lump-sum credit distribution together with an actuarially reduced annuity.[2] 5 U.S.C. § 8343a. The lump-sum distributions were equal to the amount the employees had previously contributed to the CSRS. 5 U.S.C. § 8331(8). Appellants applied the annuity rules set forth in 26 U.S.C. § 72 (Internal Revenue Code) and included in their gross income for 1987 the taxable portion of their lump-sum distributions and paid income taxes on these distributions. Thereafter, appellants filed claims for refunds of these taxes on the ground that the distributions should have been treated as a tax-free return of their contributions to the CSRS. When the Internal Revenue Service disallowed these refund claims, appellants filed suit in the Court of Federal Claims.
 
 
 5
 The Court of Federal Claims granted the government's motion for summary judgment and held that the lump-sum distributions were properly included in appellants' gross income as provided in I.R.C. § 72(e)(2)(A). George v. United States, 30 Fed.Cl. 371, 373 (1994). The court held that this outcome was required by Shimota v. United States, 21 Cl.Ct. 510 (1990), aff'd, 943 F.2d 1312 (Fed.Cir.1991), which it interpreted as holding that the lump-sum distribution and the reduced annuity provided for under 5 U.S.C. § 8343a were both part of a single annuity contract. George, 30 Fed.Cl. at 377. It concluded that the lump-sum distributions did not qualify for section 72(d) separate contract treatment[3] because they were not made from separate accounts meeting the requirements of a defined contribution plan under I.R.C. §§ 414(i) and (k). George, 30 Fed.Cl. at 377-79. In this appeal, appellants argue that these lump-sum distributions did qualify for defined contribution plan treatment under §§ 414(i) and (k) and, therefore, should have been taxed under the separate contract rule of I.R.C. § 72(d).
 
 B.
 
 6
 Some of the appellants taking advantage of the alternative form of annuity were credited in 1987 with either a "deemed deposit" or "deemed redeposit" of CSRS contributions pursuant to 5 C.F.R. § 831.2206. These deposit or redeposit amounts were treated as constructively paid to the CSRS by the appellants and accordingly, appellants' lump-sum distributions were reduced by corresponding amounts. In other words, the additional contributions that appellants needed to pay into the CSRS to increase their retirement benefits were not actually paid and the increase in the lump-sum distributions that these contributions would have generated was, in turn, not actually paid to appellants. For federal tax purposes, appellants reported lump-sum distribution amounts which were inclusive of the deemed deposits or redeposits and paid taxes on such larger amounts under the annuity rules. In their refund claims, appellants contended that they erroneously reported for 1987 the amounts representing deemed deposits or redeposits because such amounts were not actually received in that year. The Internal Revenue Service also disallowed these claims.
 
 
 7
 The Court of Federal Claims held that the amounts representing the deemed deposits and redeposits were part of the lump-sum distributions under section 8343a. George, 30 Fed.Cl. at 380-81. The court further held that the deemed amounts were reportable for tax purposes in 1987 because they provided the taxpayer with an economic benefit in that year. Id. at 381-82 (citing Goldsmith v. United States, 218 Ct.Cl. 387, 586 F.2d 810 (1978); United States v. Drescher, 179 F.2d 863 (2d Cir.1950)).
 
 DISCUSSION
 A.
 
 8
 In Shimota v. United States, this court affirmed the U.S. Claims Court's judgment that the lump sum distribution Shimota received under the alternative form of Civil Service Retirement annuity was governed by I.R.C. § 72(e) and was properly included in gross income under the annuity rules. Shimota v. United States, 943 F.2d 1312 (Fed.Cir.1991). In this case, appellants argue that the separate contract provisions, see I.R.C. §§ 72(d) and 414(k), were not considered in Shimota because that argument was not raised by the taxpayer until the filing of the reply brief on appeal. The Court of Federal Claims rejected this same argument, noting that the separate contract issue was raised and decided by the Claims Court and that its judgment was affirmed by this court with the statement that "[t]he arguments presented by Shimota in this appeal were fully considered and the issues correctly decided in the [Claims Court's] thorough and well reasoned decision." Nevertheless, the Court of Federal Claims went on to decide the separate contract issue, and we shall do so as well.
 
 
 9
 In 1986, Congress changed the Civil Service Retirement annuity provisions to permit the Office of Personnel Management to provide by regulation alternative forms of annuity to the basic retirement annuity. 5 U.S.C. § 8343a.[4] An authorized alternative was a lump sum payment at retirement equal to the employee's contributions to the CSRS and an annuity in an actuarially reduced amount. Appellants elected to receive this alternative form of retirement in lieu of the basic retirement annuity.
 
 
 10
 Annuity payments are generally subject to the tax treatment provided in I.R.C. § 72, under which the annual payments, reduced by a proportionate amount of the investment (contributions) in the annuity contract, are included in gross income for tax purposes. Section 72(e) governs the tax treatment of an amount received under an annuity contract that is not received as an annuity, such as a lump sum distribution, and provides in § 72(e)(2)(A) that if the amount is "received on or after the annuity starting date" it is includible in gross income, and subject to the annuity rules. The rule of § 72(e)(2)(A), however, is not applicable if the amount received is "in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract." I.R.C. § 72(e)(5)(E).[5]
 
 
 11
 Appellants contend that the lump sum distributions they received should be treated as a distribution in full discharge of the obligation under a separate contract. Section 72(d) provides that for purposes of section 72, "employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract." I.R.C. § 72(d). In addition, I.R.C. § 414(k) contemplates a hybrid form of plan under which a benefit that is based partly on the balance of the separate account of the participant is for purposes of § 72(d) "treated as consisting of a defined contribution plan to the extent benefits are based on the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan." I.R.C. § 414(k).
 
 
 12
 Appellants argue that their employers were required to maintain individual retirement records reflecting retirement contributions and that these are separate accounts within the meaning of section 414(k) which should be treated as a defined contribution plan.
 
 
 13
 The separate account argument has been rejected by the Seventh and Ninth Circuits. See Montgomery v. United States, 18 F.3d 500 (7th Cir.1994); Malbon v. United States, 43 F.3d 466 (9th Cir.1994). While these decisions are not binding on this court we find them persuasive. These courts have held that the records of employee contributions to CSRS cannot be treated as separate accounts under § 414(k) because they do not have the characteristics of a defined contribution plan. Pursuant to section 414(i), a defined contribution plan is:
 
 
 14
 [A] plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses and any forfeitures of accounts of other participants that may be allocated to this participant's account.
 
 
 15
 In Montgomery v. United States, the Seventh Circuit held that an account merely recording the employee's contributions was insufficient to satisfy the requirements of a defined contribution plan stating that:
 
 
 16
 The reference to separate account, if it is to identify a meaningful distinction between a defined benefit plan and a defined contribution plan, must be intended to distinguish between an entitlement to some share in an invested fund, the share depending on the contributions made by the employer and the employee and on the investment performance of those contributions, and a contractually fixed entitlement that is wholly independent of investment performance.
 
 
 17
 Montgomery, 18 F.3d at 502.
 
 
 18
 The Montgomery court said the investment-performance feature of a defined contribution plan is essential to have a lump sum distribution treated as a separate contract under sections 72(d) and 414(k). The court held:
 
 
 19
 As far as we know, there are no defined contribution plans in which the employee's only entitlement is to the return of his contributions, with everything above that going to the employer. That would be the equivalent of lending money long term at zero interest.
 
 
 20
 ...
 
 
 21
 * * *
 
 
 22
 The alternative form did not create a hybrid consisting of a defined benefit component and a defined contribution component; it merely accelerated the payment of a portion of the annuity, a defined benefit.... The alternative form of annuity was a defined benefit plan with an acceleration feature arbitrarily tied to the employee's contribution but not on that account a defined contribution plan.
 
 
 23
 Id.
 
 
 24
 The Ninth Circuit in Malbon v. United States adopted the analysis of the Seventh Circuit that a separate account must maintain the characteristics of a defined contribution plan, including the allocation of gains and losses to that account. Malbon, 43 F.3d at 470-71 ("A defined contribution plan ... provides a benefit dependent on the investment performance of the contributions.... Merely maintaining records to keep track of an individual's contributions does not satisfy this requirement.").
 
 
 25
 In support of their assertion that the separate account requirement of section 414(k) is satisfied in this case, appellants rely on the Fifth Circuit's decision in Guilzon v. Commissioner, 985 F.2d 819 (5th Cir.1993), where the government's contention that earnings and losses must be allocated to the account was rejected. The court there focused on the language of section 414(i) and determined that it was optional whether earnings and losses are allocated to the participants' separate accounts. Guilzon, 985 F.2d at 822-23. This would mean, however, that in defined contribution plans the employee might not be entitled to the investment earnings realized on the employee's contributions. Presumably the employer would receive the benefit of such earnings. The Fifth Circuit, in our view, improperly interpreted the words "income ... which may be allocated to such participant's account" as used in section 414(i).
 
 
 26
 The Fifth Circuit's interpretation places too much emphasis on the use of the word "may" in I.R.C. § 414(i). The statutory reference to "any income ... which may be allocated" to the employee's account merely reflects uncertainty as to whether any income, or gains or losses, will be realized. It does not suggest that the allocation of such earnings or losses is permissive, or that the income that is earned by the assets in the employee's account under a defined contribution plan need not be added to the employee's account. Under the concept of a defined contribution plan, the proper meaning of the term "may" is that if income is earned, that income is to be added to the participant's account. The Seventh Circuit in rejecting the analysis of the Fifth Circuit in Guilzon aptly stated that the "investment-performance feature of defined contribution plans is essential (the point missed in the Guilzon opinion, which described the feature as optional)." Montgomery, 18 F.3d at 502.
 
 
 27
 We conclude that the Court of Federal Claims correctly held that appellants are not entitled to separate contract treatment for their lump-sum distributions under §§ 72(d) and 414(k). Accordingly, these lump-sum distributions were properly reported for tax purposes as amounts received under an annuity contract under section 72(e). See I.R.C. § 72(e)(2)(A).
 
 B.
 
 28
 Some of the appellants who elected to receive the alternative form of annuity, and thus took advantage of the lump-sum distribution provision, were treated as having received in 1987 an amount equal to either their "deemed deposit" or a "deemed redeposit" of CSRS contributions pursuant to 5 C.F.R. § 831.2206. The former represents the amount that a retiring government employee must pay into CSRS to obtain credit in determining the retirement annuity for a period of federal employment during which the employee did not make current contributions to the CSRS. The latter represents a redeposit of CSRS contributions that had previously been withdrawn by the employee, but which under the provisions of 5 U.S.C. § 8334(d) may be redeposited to obtain credit for the period during which such withdrawn contributions were originally made in determining the retirement annuity.
 
 
 29
 The lump-sum distributions for these employees, who were required to make a deposit or redeposit to the Civil Service Retirement Fund to receive enhanced annuities, were reduced by the amounts of the deemed deposit or redeposit. However, appellants reported the lump-sum distribution amounts unreduced by deemed deposit or redeposit amounts in income for federal income tax purposes. Appellants contend that they overreported their lump-sum distributions because the amounts representing the deemed deposits or redeposits were not actually received in 1987. They argue that only amounts received in a tax year are subject to tax under section 72(e) and that the deemed deposit or redeposit amounts should be attributed to future annuity payments. We are unpersuaded by these arguments.
 
 
 30
 It is quite clear that the purpose of the deemed deposit/redeposit procedure adopted by the OPM was to minimize the paperwork for those appellants entitled to deposit or redeposit contributions to increase their retirement benefits. Instead of having these appellants pay additional contributions into the CSRS and then receive the same dollars back as part of the lump-sum distribution, OPM merely shortcut the procedure by giving the appellants credit for deemed payments and then reducing the amount of the lump-sum distributions. Had this shortcut procedure not been instituted there could be no argument that the entire lump-sum distribution was subject to taxation (under our holding that appellants are not entitled to separate account treatment for the lump-sum distributions). Accordingly, we conclude that appellants properly reported the amounts representing deemed deposit or redeposit as part of their lump-sum distributions for federal tax purposes in the year 1987.
 
 CONCLUSION
 
 31
 For the reasons above set forth, the judgments of the Court of Federal Claims are affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Judge Nies assumed senior status on November 1, 1995
 
 
 [1]
 For purposes of this appeal, the cases before the Court of Federal Claims in George v. United States, 30 Fed.Cl. 371 (1994) and in Schifano v. United States, Nos. 93-651T & 93-660T (March 9, 1994) (Order entering judgment on basis of George v. United States ) have been consolidated
 
 
 [2]
 The monthly rate for the reduced annuity is calculated by reducing the rate for the basis annuity "by an amount equal to the retiree's lump-sum credit divided by the present value factor for the retiree's attained age (in full years) at the time of retirement." 5 C.F.R. § 831.2205
 
 
 [3]
 The separate contract provision is set forth in § 72(d) and reads as follows:
 (d) Treatment of Employee Contributions under Defined Contribution Plans as Separate Contracts. For purposes of this section, employee contributions (and any income allocable thereto) under a defined contribution plan may be treated as a separate contract.
 Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100-647, § 1011A(b)(2)(A), 102 Stat. 3342, 3472-73 (1988). Section 72(d) was made retroactive to taxable years beginning after December 31, 1986 by § 1011A(d)(1), 102 Stat. at 3478.
 
 
 [4]
 Section 8343a provides in part:
 (a) The Office of Personnel Management shall prescribe regulations under which an employee or Member may, at the time of retiring under this subchapter ... elect annuity benefits under the section instead of any other benefits under this subchapter ... based on the service of the employee or Member.
 (b) Subject to subsection (c), the Office shall by regulation provide for such alternative forms of annuities as the Office considers appropriate, except that among the alternatives offered shall be--
 (1) an alternative which provides for--
 (A) payment of the lump-sum credit to the employee or Member; and
 (B) payment of an annuity to the employee or Member for life; and
 (2) in the case of an employee or Member who is married at the time of retirement, an alternative which provides for--
 (A) payment of the lump-sum credit to the employee or Member; and
 (B) payment of an annuity to the employee or Member for life, with a survivor annuity payable for the life of the surviving spouse.
 
 
 [5]
 Section 72(e)(5)(E) provides:
 Full refunds, surrenders, redemptions, and maturities.--This paragraph shall apply to--
 (i) any amount received, whether in a single sum or otherwise, under a contract in full discharge of the obligation under the contract which is in the nature of a refund of the consideration paid for the contract, and
 (ii) any amount received under a contract on its complete surrender, redemption, or maturity.
 In the case of any amount to which the preceding sentence applies, the rule of paragraph (2)(A) shall not apply.